PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WAYNE A. SMITH, A34-470-066,
                              *Petitioner,*

v.

JOHN ASHCROFT, Attorney General of
the United States; KEVIN ROONEY,
acting Commissioner of the
Immigration and Naturalization
Service; LOUIS D. CROCETTI, JR., as
Baltimore, Maryland District
Director of the Immigration and
Naturalization Service; U.S.
IMMIGRATION & NATURALIZATION
SERVICE,

                              *Respondents.*

No. 01-2004

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-01-2020-PJM)

Argued: May 6, 2002

Decided: July 1, 2002

Before NIEMEYER and GREGORY, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Beam wrote the opin-
ion, in which Judge Niemeyer and Judge Gregory joined.

## COUNSEL

**ARGUED:** Raj Sanjeet Singh, RAJ S. SINGH C.P.A., ESQ. P.C., Rockville, Maryland, for Petitioner. Papu Sandhu, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents. **ON BRIEF:** Robert D. McCallum, Jr., Assistant Attorney General, Emily Anne Radford, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

---

## OPINION

BEAM, Senior Circuit Judge:

Wayne Ancil Smith, a citizen of Trinidad, contends that he was denied procedural due process in violation of the Fifth Amendment in the course of his deportation proceedings in 1998. We disagree and affirm the district court's dismissal of his 28 U.S.C. § 2241 habeas corpus petition.

I.

Smith entered the United States in 1967 as the dependent of a diplomatic visa holder, and became a lawful permanent resident in 1974. This was his status in March 1992 when he entered a plea of guilty to felony drug charges. Based on that conviction, in March 1996, pursuant to the Immigration and Naturalization Act, 8 U.S.C. § 1101 et seq. (the Act), the INS issued an order to show cause why he should not be deported as an alien convicted of a law relating to a controlled substance and as an alien convicted of an aggravated felony.

In the administrative deportation proceedings, Smith applied for a waiver of deportation under the former section 212(c) of the Act, 8 U.S.C. § 1182(c). This section granted the Attorney General broad discretion to admit aliens who would otherwise be excludable, and had been interpreted by the Board of Immigration Appeals (BIA) as authorizing any permanent resident alien with seven consecutive

years of lawful domicile to apply for a discretionary waiver of deportation. *See INS v. St. Cyr*, 533 U.S. 289, 294-95 (2001). The immigration judge denied the request, reasoning that amendments to the Act pursuant to the newly enacted Antiterrorism and Effective Death Penalty Act (AEDPA) precluded section 212(c) waivers for drug offenders. The immigration judge ordered Smith deported in April 1997.

Smith timely appealed the immigration judge's ruling to the BIA, which denied the appeal on August 24, 1998. Like the immigration judge, the BIA also concluded that application of AEDPA's amendments to section 212(c) precluded Smith from presenting his case for or obtaining, on the merits, a discretionary waiver. On November 9, 1998, Smith challenged the BIA's adjudication by filing a petition for writ of habeas corpus in the United States District Court for the District of Maryland. The district court ruled that it did not have jurisdiction over an "appeal" of a BIA adjudication and transferred the case to this Circuit pursuant to 28 U.S.C. § 1631. This court denied a stay of deportation and granted the government's motion to dismiss for lack of jurisdiction. Smith was deported on December 7, 1998.

Smith illegally reentered the United States through Detroit in January 1999, and returned to his home in Maryland. He remained there undiscovered until he was pulled over for a traffic stop a few years later. The government immediately moved to reinstate the deportation order under 8 U.S.C. § 1231(a)(5), and Smith was ordered removed without a hearing on March 16, 2001. On July 9, 2001, Smith challenged this ruling by filing a habeas petition with the district court. The district court dismissed the petition without elaboration, but stayed removal for sixty days. On October 3, 2001, this court denied Smith's motion for stay of removal and Smith was deported to Trinidad on December 13, 2001. Smith has timely appealed the dismissal of the habeas petition.

## II.

We first address the issue of jurisdiction. The government argues that we have no jurisdiction because Smith is not currently "in custody," but instead has been deported and is out of the country. However, Smith needed only to be "in custody" at the time the petition was filed to avoid a jurisdictional challenge based on the "in custody"

requirements of the habeas statute. *Chong v. INS*, 264 F.3d 378, 382-83 (3d Cir. 2001) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). In *Carafas*, the Supreme Court held that where the petitioner was in custody at the time the petition was filed, his release from prison before the petition for certiorari was filed did not moot the case because petitioner could still suffer "serious disabilities because of the law's complexities and not because of his fault, if his claim that he has been illegally convicted is meritorious." *Carafas*, 391 U.S. at 239; *cf. Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (petitioner who was incarcerated at the time the petition was filed satisfies "in custody" requirement of 28 U.S.C. § 2254).

Smith was in custody at the time the petition was filed, and though Smith is no longer in the United States, he is unmistakably affected by the legal implications of our decision. If he prevails, there is a possibility he can beneficially unravel his untoward immigration status. Thus, because Smith was in custody at the time he filed the petition, we have not lost jurisdiction over this appeal.

In *St. Cyr*, prior to ruling on whether AEDPA retroactively applied to bar discretionary section 212(c) relief, the Supreme Court addressed the initial question of habeas jurisdiction. The government had argued that the jurisdiction-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) left no judicial forum available. The Court reasoned that because Congress did not make a plain statement revoking habeas jurisdiction and because there was no other available forum to adjudicate the purely legal question at issue, habeas jurisdiction was appropriate in the district court. 533 U.S. at 314. The Court also determined that construing the IIRIRA provisions to preclude court review of a "pure question of law" would lead to "substantial constitutional questions." *Id.* at 300. Therefore, habeas jurisdiction was made available to the petitioner. *Id.* at 314.

Although this case is in a somewhat different procedural posture than *St. Cyr*, its principles are applicable here. As in *St. Cyr*, the Act bars direct judicial consideration of Smith's claim. Smith contends that his Fifth Amendment right to due process was violated by the 1998 deportation proceedings because he was not given court review of the BIA ruling that he was not entitled to discretionary relief. The

Act currently prohibits direct judicial review of this claim because it implicates the validity of a prior order of removal. The Act, 8 U.S.C. § 1231(a)(5), provides in pertinent part: "[i]f . . . an alien has reentered . . . after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."[1] This section precludes direct, non-habeas judicial review of any irregularities associated with the 1998 deportation order. Thus, if we do not find habeas jurisdiction, Smith, like the petitioner in *St. Cyr*, is left without an available forum for adjudication of this purely legal question. To construe the Act to preclude all review of this claim would raise constitutional concerns similar to those expressed by the *St. Cyr* Court.

The government argues that Smith's claim is distinguishable from *St. Cyr* because Smith was afforded a full opportunity to litigate this claim in the prior proceeding. However, that is not quite correct. As the government admits in its brief, the procedure for appealing the August 1998 BIA decision was not entirely clear at the time. Smith filed a petition for habeas corpus with the district court, which the district court construed as a petition for direct review and transferred to this court. This court dismissed for lack of jurisdiction, likely because the IIRIRA, which had become effective in April 1997, precluded judicial review for denials of discretionary relief and for aliens removable because they have committed a criminal offense. *See* 8 U.S.C. § 1252(a)(2)(B) & (C).

Subsequently, this court held in *Bowrin v. INS*, 194 F.3d 483, 489 (4th Cir. 1999) (per curiam), that the district court had habeas jurisdiction to review questions of law relating to the administrative denial of 212(c) relief. Obviously, then, Smith's petition for habeas consideration, filed prior to *Bowrin* in 1998, simply fell between the judicial cracks. Thus, we disagree with the government's argument that *St.*

---

[1]In his brief and at argument, Smith purported to challenge the constitutionality of 8 U.S.C. § 1231(a)(5). However, this claim was not advanced in the habeas petition or in briefing to the district court. We therefore decline to take up the issue on appeal.

*Cyr*'s jurisdictional ruling is distinguishable from this case. Accordingly, the district court had habeas jurisdiction over Smith's claim.[2]

Smith argues that the Due Process Clause of the Fifth Amendment was violated in 1998 by the lack of meaningful review of the immigration judge's refusal to grant him section 212(c) relief and suspend deportation. In order to advance a due process claim, Smith must first establish that he had a property or liberty interest at stake. *Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993); *Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990). Smith cannot meet this initial burden, because he has no property or liberty interest in the "right" to discretionary section 212(c) relief.

In order for a statute to create a vested liberty or property interest giving rise to procedural due process protection, it must confer more than a mere expectation (even one supported by consistent government practice) of a benefit. *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996). There must be *entitlement* to the benefit as directed by statute, and the statute must "'act to limit meaningfully the discretion of the decision-makers.'" *Id.* (quoting *Board of Pardons v. Allen*, 482 U.S. 369, 382 (1987) (O'Connor, J. dissenting)).

On many occasions this circuit has held that discretionary statutory "rights" do not create liberty or property interests protected by the Due Process Clause. For instance, the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause. *Appiah v. INS*, 202 F.3d 704, 709 (4th Cir.), *cert. denied*, 531 U.S. 857 (2000). In *Appiah*, petition-

---

[2]Smith alternatively argues that we treat this as a petition for direct review pursuant to 8 U.S.C. § 1252(a). Although we would have jurisdiction to review the order of reinstatement, *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir. 2001), we do not have jurisdiction under section 1252(a) to inquire into the prior order of deportation, according to the terms of section 1231(a)(5). *Ojeda-Terrazas v. Ashcroft*, No. 01-60460, 2002 WL 721069, *1 (5th Cir. May 9, 2002) As we understand the claim Smith is making in this appeal, a petition for direct review under section 1252(a) would not provide the relief he seeks. We therefore decline to treat it as such.

ers were challenging the constitutionality of IIRIRA's new "stop time" provisions,[3] and the case was before this court on direct judicial review under the Act. The court held that because suspension of deportation is discretionary, it does not create a liberty or property interest protected by the Due Process Clause. *Id.* "This is true even where the state 'frequently' has granted the relief sought." *Id. See, e.g., Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (discretionary right to suspension of deportation is not an interest protected by the Due Process Clause); *Telfel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999) (same).

Similarly, this circuit held that because the Army had discretion to discharge enlisted personnel, a service member had no property interest in continued employment with the Army. *Guerra v. Scruggs*, 942 F.2d 270, 278 (4th Cir. 1991). On the other hand, in *Mallette*, the court noted that under the county disability retirement ordinance, once an employee had met particularized eligibility standards, the Retirement System's Board did not have discretion to deny the employee benefits. *Mallette*, 91 F.3d at 635. Thus, the county employees who met the requirements had a claim of entitlement in disability retirement benefits protected by due process. *Id.* at 636.

Former section 212(c) did not in any way limit the discretion of the Attorney General to admit otherwise deportable aliens. This statute in no way created an entitlement to a waiver of deportation, as it "grant-[ed] the Attorney General *broad* discretion to admit excludable aliens." *St. Cyr*, 533 U.S. at 294-95 (emphasis added). The Act like-

---

[3]Prior to enactment of the IIRIRA, one of the conditions an alien had to establish to be considered for a suspension of deportation was that the alien be continuously physically present in the United States for at least seven years immediately preceding the date of application for suspension of deportation. *See* 8 U.S.C. § 1254(a) (1994). Prior to the IIRIRA, the time spent in deportation proceedings counted toward the continuous seven-year requirement. *Id.* The IIRIRA changed this by providing that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear." 8 U.S.C. § 1229b(d)(1). Thus, the initiation of deportation proceedings effectively "stops the clock," and an alien can no longer continue to accrue years for the physical presence requirement after proceedings have begun. *Appiah*, 202 F.3d at 707.

wise did not limit whatsoever the Attorney General's discretion to waive deportability. Accordingly, Smith had no protected liberty or property interest in discretionary 212(c) relief, a circumstance fatal to his due process claim.

Smith cites *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), for the proposition that, without regard to liberty or property interests, his due process rights were violated in 1998 by a lack of meaningful review in a judicial forum. We disagree with this contention. In *Mendoza-Lopez*, the question before the court was whether a defendant who was being *criminally* prosecuted for illegally reentering after lawful deportation could collaterally attack the prior deportation order. The Court concluded that since *lawful* deportation was a material element of the statutory offense, due process required, in this limited situation, a pretrial review of whether the prior deportation order was lawful. *Id.* at 837-38. This was especially true when "defects in an administrative proceeding foreclose judicial review of that proceeding." *Id.* at 838.

Thus, while the *Mendoza-Lopez* Court admittedly espoused judicial review of administrative actions, the Court reasoned that review is essential when the outcome of the administrative proceeding is used as an element for criminal conviction. *Id.* at 839. It is an overly expansive, and in fact, an incorrect, reading of *Mendoza-Lopez* to suggest that the Constitution requires "meaningful review" of any and all administrative procedures.[4]

### III.

For the foregoing reasons, we hold that, while the district court did have jurisdiction over Smith's habeas corpus petition, because Smith has no liberty or property interest in a discretionary waiver of deportability, the petition must be denied on the merits.

*AFFIRMED*

---

[4]The parties also advance arguments concerning the retroactive application of *St. Cyr*'s holding that AEDPA does not bar section 212(c) relief for aliens who pled guilty prior to its enactment, and cite both *Bousley v. United States*, 523 U.S. 614 (1998), and *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993). However, because we find that Smith has no meritorious constitutional claim, we need not decide the issue.