PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                    No. 02-4202

FERNANDO FREDERICK WILSON,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-01-162)

Argued: October 31, 2002

Decided: January 16, 2003

Before WILKINSON, Chief Judge, and LUTTIG and
MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson joined. Judge Motz wrote an opinion
concurring in the judgment.

## COUNSEL

**ARGUED:** Joseph Barry McCracken, COOK & MCCRACKEN,
Norfolk, Virginia, for Appellant. William Joseph Howard, Assistant
United States Attorney, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Paul J. McNulty, United States Attorney, Stephen W. Hay-
nie, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Fernando Frederick Wilson appeals his conviction under 8 U.S.C. §§ 1326(a) and (b)(2) for unlawful reentry of a deported alien. On appeal, he asserts that the district court erred by failing to grant his motion to dismiss. Wilson moved to dismiss on the ground that a defect in his original deportation proceedings, specifically the failure of the Board of Immigration Appeals ("BIA") to consider his application for waiver of deportation, rendered the deportation order invalid and thus not a proper basis on which to mount a section 1326 prosecution. He also challenges his sentence enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2L1.2(b)(1)(C), which provides for an enhancement when an alien was previously deported after conviction for an "aggravated felony." Wilson argues that his state conviction for possession of cocaine does not constitute an aggravated felony because it does not qualify as a "drug trafficking crime." We conclude that Wilson's collateral attack is itself defective and, further, that the sentence enhancement was proper. Accordingly, we affirm.

I.

The undisputed facts are as follows. Wilson, a native and citizen of Panama, entered the United States without immigration inspection in early 1977 and promptly joined the United States Marine Corps. In 1982, his immigration status was adjusted to that of a lawful permanent resident. On September 3, 1986, while still serving in the military, Wilson was indicted in Virginia for possession with intent to distribute cocaine. He pled guilty to the lesser included offense of felony possession of cocaine. Two years later, Wilson tested positive for drugs and was given a bad conduct discharge from the Marine Corps.

On November 22, 1994, the Immigration and Naturalization Service ("INS") ordered Wilson to show cause why it should not deport him for having been convicted of a drug offense. At a hearing before an immigration judge ("IJ"), Wilson conceded his deportability but, as a lawful permanent resident, requested that the IJ grant him a waiver of deportation pursuant to section 212(c) of the Immigration

and Naturalization Act ("INA"). *See* 8 U.S.C. § 1182(c) (1994 & Supp). Section 212(c) granted the Attorney General broad discretion to admit aliens who would otherwise be excludable, and had been interpreted by the BIA as authorizing any permanent resident alien with seven consecutive years of lawful domicile, such as Wilson, to apply for a discretionary waiver of deportation.

Although charged prior to their enactment, Wilson's case came before the IJ following enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), enacted on September 30, 1996, 110 Stat. 3009-546, which together comprehensively amended the INA, 66 Stat. 163, as amended 8 U.S.C. § 1101 *et seq.* Of particular relevance to this appeal, AEDPA section 440(d) amended INA section 212(c) to preclude section 212(c) discretionary relief for aliens convicted of certain enumerated criminal offenses, including drug offenses. The Attorney General subsequently interpreted the provisions of AEDPA and IIRIRA as applying retroactively. *See In re Soriano*, Interim Decision 3289, 1996 WL 426888 (Op. Att'y Gen. Feb. 21, 1997).

However, the matter was still unsettled when the IJ adjudicated Wilson's case. On July 19, 1996, the IJ found Wilson deportable. As to Wilson's section 212(c) waiver application, the IJ chose to apply section 212(c) as the law stood when Wilson was charged in 1994, and, accordingly, considered the merits of Wilson's section 212(c) application. The IJ denied Wilson's section 212(c) application, ruling that the unfavorable equities outweighed the favorable equities, and ordered that Wilson be deported to Panama. J.A. 95-96.

Wilson appealed the section 212(c) denial to the BIA. The BIA sustained the order of deportation, relying on the Attorney General's opinion that AEDPA and IIRIRA applied retroactively to bar section 212(c) relief. As a result, the BIA did not review the merits of Wilson's section 212(c) application.

Wilson was deported on July 2, 1998. He was given written warning that if he returned to the United States without permission he was subject to prosecution for unlawful reentry under 8 U.S.C. § 1326.

After Wilson's deportation, the Supreme Court ruled in *INS* v. *St. Cyr*, 533 U.S. 289 (2001), that AEDPA did not apply retroactively to bar the opportunity for section 212(c) relief for aliens who pled guilty to an offense which would have left them eligible for section 212(c) relief prior to the statute's enactment.

Sometime in 2000, Wilson reentered the United States without permission. He was arrested by the INS on July 20, 2001, and indicted for unlawful reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He moved to dismiss on the ground that his original deportation order was invalid because the BIA should have considered his section 212(c) application. The district court denied Wilson's motion to dismiss, reasoning that, even assuming Wilson could show a violation of his due process rights, because he would have had at most a fifty-fifty chance of receiving 212(c) relief from the BIA, he could not show actual prejudice. *United States* v. *Wilson*, No. 2:01cr162, Mem. Order at 7 (E.D. Va. Nov. 6, 2001) [hereinafter the "*Order*"]. Wilson was subsequently found guilty under section 1326(a) and (b)(2). At sentencing, the district court calculated Wilson's base offense level as 8 and, over Wilson's objection, enhanced his offense level to 16 on the ground that his 1986 conviction for felony possession of cocaine amounted to an aggravated felony for purposes of U.S.S.G. § 2L1.2(b)(1)(C). The district court sentenced Wilson to 18 months' imprisonment, a special assessment of $100.00, and a 2 year period of supervised release. Wilson appealed.

II.

On appeal, Wilson reasserts his argument that his original deportation order is invalid because he was impermissibly denied the opportunity to apply for a section 212(c) waiver before the BIA. Because it is defective, Wilson contends, that order cannot serve as the basis for a conviction under section 1326.

Under 8 U.S.C. § 1326(d), an alien may collaterally attack the validity of his deportation order when prosecuted for illegal reentry under section 1326(a). However, section 1326(d) contains three conditions that a defendant must satisfy before he will be allowed to mount a collateral attack. The alien must demonstrate that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These requirements are listed in the conjunctive, so a defendant must satisfy all three in order to prevail. *See United States* v. *Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). The government concedes that Wilson exhausted his administrative remedies, but contends that he can show neither of the other two requirements.

This court reviews Wilson's challenge to his conviction *de novo*. *See United States* v. *Hernandez-Avalos*, 251 F.3d 505, 507 (5th Cir. 2001). For the reasons discussed below, we conclude that Wilson's collateral attack must fail.

A.

Wilson's collateral attack fails because he cannot show that a defect in the underlying deportation order rendered it fundamentally unfair. *See* 8 U.S.C. § 1326(d)(3). In order to establish fundamental unfairness, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *See*, *e.g.*, *United States* v. *Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998); *United States* v. *Encarnacion-Galvez*, 964 F.2d 402, 407 (5th Cir. 1992).

While the district court assumed that Wilson could show a due process violation, in fact he cannot. In order to succeed on a due process claim, Wilson "must first establish that he had a property or liberty interest at stake." *Smith* v. *Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002). In *Smith* v. *Ashcroft*, the court considered whether there is a due process right to section 212(c) relief. Like Wilson, Smith was deported after enactment of AEDPA and IIRIRA and before the *St.*

*Cyr* decision. Both the IJ and the BIA denied Smith the opportunity to apply for a section 212(c) waiver. *Id.* at 427. Smith's attempts to get judicial review of the BIA ruling were unavailing, and he was deported. Later, he illegally reentered the United States. When the government learned of this, it immediately moved to reinstate the deportation order. Smith brought a habeas corpus petition asserting that "his Fifth Amendment right to due process was violated by the 1998 deportation proceedings because he was not given court review of the BIA ruling that he was not entitled to discretionary relief." *Id.* at 428. The *Smith* court denied the due process challenge, holding unequivocally that there is "no protected liberty or property interest in discretionary 212(c) relief." *Id.* at 430. The court reached this conclusion because section 212(c) does not create an entitlement, but is rather completely discretionary in nature. *Id.* at 429-30.

Wilson's claim that his original deportation proceedings were fundamentally unfair is effectively the same as that advanced by the habeas petitioner in *Smith*. And, under *Smith*, even if Wilson was entitled to have the BIA consider his section 212(c) application, he cannot show that the failure of the BIA to do so denied him due process because he had no due process right in the section 212(c) relief.[1]

---

[1]In *Smith*, the court also considered Smith's claim that "without regard to liberty or property interests, his due process rights were violated in 1998 by a lack of meaningful review in a judicial forum." *Id.* at 430. Smith argued that *United States* v. *Mendoza-Lopez*, 481 U.S. 828 (1987), supported his claim. The court disagreed and distinguished *Mendoza-Lopez* on the ground that it involved a criminal prosecution and thus was premised on the reasoning that "review is essential when the outcome of the administrative proceedings is used as an element for a criminal conviction." *Smith*, 295 F.3d at 431. However, *Mendoza-Lopez* only required the availability of judicial review in the form of a collateral attack on a section 1326 prosecution when the original deportation proceedings were both fundamentally unfair *and* resulted in a denial of judicial review. Section 1326(d) codifies and maintains these separate requirements. *See* 8 U.S.C. §§ 1326(d)(2) and (3). Thus, the question whether Wilson was denied judicial review in his original deportation proceedings is independent from the question whether the proceedings were fundamentally unfair, *i.e.*, whether they impinged upon a cognizable due process right. *Smith*'s holding that section 212(c) does not give rise to a due process right is binding upon this court and requires the rejection of Wilson's collateral attack pursuant to section 1326(d)(3) regardless of whether he is entitled to heightened judicial review requirements by virtue of being subject to criminal prosecution.

## B.

Although Wilson's claim could be denied solely on the basis of his failure to identify a due process violation, Wilson has failed to show prejudice, even assuming such a violation. In the district court, counsel for Wilson speculated that, if Wilson had been able to get BIA review of the IJ's section 212(c) ruling, he would have had a fifty-fifty chance of having the IJ's decision overturned. J.A. 65-66. The district court found that a fifty-fifty chance was not sufficient to establish prejudice because it did not "show that but for the alleged violation of his rights by the BIA . . . he would not have been deported." *Order* at 7.

The district court correctly found that Wilson failed to establish prejudice. In order to demonstrate prejudice, a defendant must show "a reasonable likelihood that but for the errors complained of, the defendant would not have been deported." *Encarnacion-Galvez*, 964 F.2d at 407; *see also United States* v. *Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995) ("Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'").

Even a cursory review of the equities in Wilson's case demonstrates that his actual chance of obtaining a reversal at the BIA level were significantly lower than the fifty-fifty figure suggested by his counsel. "[W]hen an alien has a record of serious criminal activity, he must demonstrate 'unusual or outstanding' equities in order to be eligible for a favorable exercise of discretion under section 212(c)." *Gandarillas-Zambrana* v. *Board of Immigration Appeals*, 44 F.3d 1251, 1259 (4th Cir. 1995). Wilson's conviction for felony possession of cocaine was certainly a serious criminal act. In addition, he had significant negative equities, including his bad conduct discharge from the Marine Corps for a positive drug test, and his minimal income which "suggest[s] that he and his family will be continued burdens on the U.S. taxpayer in the future if they remain" in the United States. J.A. 30 (quotation from the decision of the IJ on the merits of Wilson's section 212(c) application). In short, as the IJ recognized, Wilson demonstrated none of the "unusual or outstanding" favorable equities that would make him likely to receive a section 212(c) waiver. Because he points to no evidence that would indicate

otherwise,[2] other than his attorney's optimistic fifty-fifty projection, Wilson has failed to demonstrate a reasonable likelihood that but for the alleged error, he would not have been deported.[3]

### III.

Wilson also challenges the enhancement of his sentence pursuant to U.S.S.G. § 2L1.2(b)(1)(C). The guideline provides for an 8-level enhancement for illegal reentry when the defendant was previously deported after "a conviction for an aggravated felony." U.S.S.G. § 2L1.2(b)(1)(C). We review the district court's imposition of the sentence enhancement *de novo* because it entails the interpretation of a statute. *See United States* v. *Campbell*, 94 F.3d 125, 127 (4th Cir. 1996).

The issue presented is whether a state conviction for possession of an unknown quantity of cocaine can ultimately qualify as an aggravated felony under section 2L1.2 if it is a felony under the applicable state law but is punishable only as a misdemeanor under the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.* This is a question of first impression in this circuit. The district court concluded that simple possession of drugs, if a felony under state law, can constitute an aggravated felony. J.A. 116-17. We agree, and thereby join the seven other circuits that have addressed the issue. *See United States* v. *Ibarra-Galindo*, 206 F.3d 1337 (9th Cir. 2000); *United States* v.

---

[2]In *St. Cyr*, the Supreme Court did note that many aliens have sought section 212(c) relief and "a substantial percentage of their applications for § 212(c) relief have been granted." *St. Cyr*, 533 U.S. at 296. But *St. Cyr* was not referring specifically to cases in which an IJ denied the initial section 212(c) application, which is the case we have before us. At oral argument, counsel for Wilson acknowledged that he had presented no statistics bearing on that particular circumstance.

[3]Our decision that Wilson has shown neither a due process violation nor prejudice renders it unnecessary to consider whether Wilson has met section 1326(d)(2)'s requirement of the denial of an opportunity for judicial review. By the same token, we need not consider the government's argument that *St. Cyr*'s holding is inapplicable to Wilson's original deportation proceedings because the proceedings became final three years before *St. Cyr* was decided.

*Pornes-Garcia*, 171 F.3d 142 (2d Cir. 1999); *United States* v. *Simon*, 168 F.3d 1271 (11th Cir. 1999); *United States* v. *Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997); *United States* v. *Briones-Mata*, 116 F.3d 308 (8th Cir. 1997); *United States* v. *Cabrera-Sosa*, 81 F.3d 998 (10th Cir. 1996); *United States* v. *Restrepo-Aquilar*, 74 F.3d 361 (1st Cir. 1996).

Our analysis begins with the guideline itself. The term "aggravated felony" is not defined in the text of section 2L1.2. However, the application note for that subsection states that "'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2, Application Note 2. Section 1101(a)(43) of Title 8 provides that "[t]he term 'aggravated felony' means— (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), *including a drug trafficking crime (as defined in section 924(c) of Title 18)*." 8 U.S.C. § 1101(a)(43)(B) (emphasis added). Section 924(c)(2) of Title 18, in turn, states that

> the term "drug trafficking crime" means *any felony punishable under the Controlled Substances Act* (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.).

18 U.S.C. § 924(c)(2) (emphasis added).

The next step of the analysis is to determine what the elements of a drug trafficking crime are under section 924(c)(2). As it is structured, section 924(c)(2) is plainly comprised of two separate elements. It speaks first of "any felony" and then goes on to list three separate statutes under which the felony may be punishable. Thus, the two elements of section 924(c)(2) are (1) any felony, that is (2) punishable under the CSA (or one of the other two enumerated statutes). The other circuits have reached the same interpretive conclusion. *See Ibarra-Galindo*, 206 F.3d at 1339; *Pornes-Garcia*, 171 F.3d at 145; *Simon*, 168 F.3d at 1272; *Hinojosa-Lopez*, 130 F.3d at 694; *Cabrera-Sosa*, 81 F.3d at 1000; *Restrepo-Aquilar*, 74 F.3d at 364.

Turning to the first element — any felony — this court must consider whether Wilson's state conviction for possession of cocaine

amounts to a felony within the meaning of section 924(c)(2). Simple possession of an unknown quantity of cocaine is punished by the CSA as a misdemeanor. *See* 21 U.S.C. § 844(a) (providing for a term of imprisonment of not more than 1 year). But the inquiry does not stop there. The CSA defines the term "felony" as "any Federal or State offense classified by applicable Federal *or State* law as a felony." 21 U.S.C. § 802(13) (emphasis added). That definition, which is clear and unambiguous, encompasses Wilson's Virginia conviction because simple possession of a controlled substance is a felony under Virginia law. *See* Va. Code § 18.2-250(a). So, while the CSA would not *punish* Wilson's conduct as a felony, it does *define* it as a felony given the punishment it receives under Virginia law.

The CSA definition of felony, while not itself a part of section 924(c)(2), is nevertheless relevant as an interpretive matter. Section 924(c)(2) does not contain any internal limitation on its broad reference to "any felony" other than that such felonies be punishable under one of the enumerated statutes. It is therefore reasonable to interpret those words as including within their scope felonies as defined by the very acts that the statute references. For the foregoing reasons it is clear, and we so hold, that a state conviction for possession of cocaine can constitute a felony within the meaning of section 924(c)(2), if the offense is classified as a felony under the law of the relevant state, even though the same offense would only be punishable as a misdemeanor under federal law.[4]

Wilson also satisfies the second element of section 924(c)(2). Simple possession of an unknown quantity of cocaine is punishable under the CSA. *See* 21 U.S.C. § 844(a). Thus, because Wilson's conviction for felony possession of cocaine satisfies both elements of section 924(c)(2) and thereby constitutes a drug trafficking crime, he has committed an aggravated felony as that term is defined in Application Note 2 of section 2L1.2. The district court therefore correctly applied the 8-level enhancement.

---

[4]This definition of felony is also consistent with the definition used in the guideline at issue. Application Note 1 of section 2L1.2 defines "felony" as "any federal, *state*, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2, Application Note 1(B)(iv) (emphasis added).

Wilson would have us interpret the statute differently. He contends that when 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the" CSA, it means that the offense must be punishable as a felony *by the CSA*, not simply punishable under the CSA. We need look no further than the text of section 924(c)(2) to refute Wilson's argument. The statute does not say that the offense must be punishable as a felony by the CSA. Rather, the statute merely says that the offense must be a felony, punishable thereunder. *See Restrepo-Aquilar*, 74 F.3d at 364. In other words, there is no suggestion from the text of the statute itself that only those offenses that federal law punishes as felonies are eligible. Quite the contrary, as noted above, federal law itself *defines* the crime Wilson committed as a felony, even though it would not *punish* it as such. Wilson invites us to, in effect, rewrite the statute, but that we cannot do.

Wilson also argues that our decision in *United States* v. *Garnett*, 243 F.3d 824 (4th Cir. 2001), demands the contrary result. In *Garnett*, we considered whether a sentence enhancement under U.S.S.G. § 2K2.1(b)(5) for use of a machine gun in connection with a felony offense was warranted. One potential felony upon which the sentence enhancement could have been based was a drug trafficking crime as defined by section 924(c)(2). We remanded the case for additional fact finding because the findings below did not indicate whether the amount of drugs at issue in the case rose to the level of a felony offense. We noted that "possession of less than five grams of cocaine base constitutes a misdemeanor only and cannot serve as . . . 'a drug trafficking offense,' for purposes of 18 U.S.C. § 924(c)(1). . . ." *Garnett*, 243 F.3d at 829.

Wilson's reliance upon *Garnett* is unavailing. In *Garnett*, there was no state conviction for felony possession. A careful reading of *Garnett* reveals that when *Garnett* contrasted misdemeanor drug offenses with felony drug offenses, it was talking about the way in which the various offenses were *punished* under the CSA. *See id.* at 830 ("possession of less than five grams of cocaine base by a defendant with no prior drug convictions is punishable by imprisonment for up to one year only, and therefore is not a felony. 21 U.S.C. § 844."). *Garnett* did not purport to answer the question of whether the presence of a state felony conviction for simple possession could qualify,

as a *definitional* matter, as a drug trafficking offense because no such felony conviction was present in that case. *Garnett* never cited CSA section 802(13), and it is that provision, in conjunction with the state conviction absent in *Garnett*, that renders Wilson's conduct a felony for purposes of section 924(c)(2).[5]

## *CONCLUSION*

Wilson's collateral attack on his underlying deportation proceedings fails for the fundamental reason that nothing in those deportation proceedings deprived him of due process or otherwise prejudiced his attempts to avoid deportation. His attack on his sentence enhancement also fails because we conclude that a state conviction for felony possession of cocaine can qualify as a drug trafficking crime and thereby render a defendant eligible for an enhancement under U.S.S.G. § 2L1.2 for the commission of an aggravated felony. As Wilson alleges no other defects in his underlying conviction or sentence, the district court's judgment is affirmed.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the judgment, but write separately to clarify that the majority's discussion in Section II. A. should not be misread to permit government conduct that has long been held unconstitutional.

More than fifteen years ago, in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), eight of the nine Supreme Court Justices agreed

---

[5]In a last ditch effort to avoid the enhancement, Wilson invokes the rule of lenity. However, we conclude, as have the other circuits that have considered the issue, that any ambiguity in the statute is minimal at best and thus insufficient to render application of the rule of lenity appropriate. *See*, *e.g.*, *Johnson* v. *United States*, 529 U.S. 694, 713 n.13 (2000) ("Lenity applies only when the equipoise of competing reasons cannot otherwise be resolved. . . ."); *Smith* v. *United States*, 508 U.S. 223, 239 (1993) ("The mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable.").

that a defendant has a constitutional right to collaterally attack a fundamentally unfair deportation order. Thus, to the extent 8 U.S.C.A. § 1326 (West 1999) then permitted "a court . . . [to] impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been," the Court held "the statute does not comport with the constitutional requirement of due process." *Id.* at 837 (emphasis in original).[1] And while Chief Justice Rehnquist dissented from the holding of the Court, he "agree[d] with the view that there may be exceptional circumstances where the Due Process Clause prohibits the Government from using an alien's prior deportation as a basis for imposing criminal liability under § 1326." *Id.* at 842 (Rehnquist, C.J., dissenting).

Obviously no lower federal court can overrule the Supreme Court, and I do not believe the majority intends to do that, but I fear that its holding in Section II. A. might be misinterpreted as attempting to do so. In that section, the majority holds Wilson cannot collaterally attack his deportation order because he had no due process liberty or property interest in the § 212(c) discretionary waiver that should have been available at the deportation proceeding. This may be true in Wilson's case, but if so, it is not the discretionary nature of the relief available at the deportation proceeding that defeats his claim.

Rather, after *Mendoza-Lopez*, I take it to be quite clear that, regardless of the discretionary nature of relief available at a deportation proceeding, if a defendant's initial deportation, for example, had been ordered by a biased judge, relying on the knowing use of perjured testimony, or garnered under threat of mob violence, the defendant could

---

[1]In response to this ruling, Congress amended § 1326 to permit an alien prosecuted for illegal reentry after deportation, who has exhausted his administrative remedies, to collaterally attack the validity of the deportation order as violative of his due process rights. *See* 8 U.S.C.A. § 1326(d) (West 1999); 140 Cong. Rec. S 14544 (daily ed. Oct. 6, 1994) (statement of Sen. Smith) (stating that the language of § 1326(d) "which is taken directly from the U.S. Supreme Court case of *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), is intended to ensure that minimum due process is followed in the original deportation proceeding while preventing wholesale, time-consuming attack on underlying deportation orders.").

collaterally attack this deportation in any subsequent prosecution in which deportation is an element of the crime. *Cf. Mendoza-Lopez*, 481 U.S. at 839 n.17 (declining to enumerate the precise contours of fundamentally fair deportation hearings, but noting that Court had recognized in the criminal context "some errors necessarily render a trial fundamentally unfair," such as use of coerced confession, adjudication by a biased judge, mob violence, and knowing use of perjured testimony, and stating that "[w]hile the procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial, analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations" (internal quotation marks and citations omitted)). However, the majority's opinion could be misread to imply that even under these circumstances, a defendant could not show that his original deportation proceeding had been fundamentally unfair because the relief that he sought under § 212(c) was "completely discretionary in nature." *Ante* at 6.

The majority is, of course, correct, that "[i]n order to succeed on a due process claim," a defendant "'must first establish that he had a property or liberty interest at stake.'" *Ante* at 5 (quoting *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002)). But as the Court recognized in *Mendoza-Lopez*, a defendant facing criminal prosecution under § 1326 does have a liberty interest at stake — the liberty interest in not being imprisoned on the basis of a fundamentally unfair deportation proceeding that has never been subjected to judicial review. *See* 481 U.S. at 837.

The majority states that

> *Smith*'s holding that section 212(c) does not give rise to a due process right . . . requires the rejection of Wilson's collateral attack pursuant to section 1326 (d)(3) regardless of whether he is entitled to heightened judicial review requirements by virtue of being subject to criminal prosecution.

*Ante* at 6, n.1.

This is true when a defendant's only claim is that he was deprived of the opportunity for judicial review. Deprivation of judicial review

does not equate to a fundamentally unfair administrative hearing. Rather, as the majority correctly notes, fundamental fairness and judicial review are separate elements under *Mendoza-Lopez* and § 1326(d). *See id.*

However, when a criminal defendant seeks to collaterally attack his deportation order based on the claim made in *Smith* — that he was deprived of the opportunity for judicial review, *see Smith*, 295 F.3d at 429, 430 — *as well as* on a claim not made in *Smith* — that his initial deportation proceeding had been fundamentally unfair (e.g., because the judge was biased) — then *Mendoza-Lopez*, not *Smith*, controls.[2] In such cases, a court must analyze the question of whether the initial deportation had been fundamentally unfair on its merits, even if at his initial deportation hearing the defendant sought discretionary relief such as a § 212(c) waiver.

In this case, Wilson's contention that the Board of Immigration Appeals applied an incorrect legal interpretation arguably states a claim of fundamental unfairness, albeit one of questionable merit. However, because Wilson has failed to demonstrate any prejudice, we need not reach that claim. *See ante* at 6-8.

---

[2]The *Smith* court itself recognized the limits of its analysis in light of *Mendoza-Lopez* and specifically distinguished the case before it, involving only an alien's deportation, from cases such as Wilson's, involving only an alien's prosecution for illegal re-entry after deportation. The court in *Smith* explained:

> In *Mendoza-Lopez*, the question before the court was whether a defendant who was being *criminally* prosecuted for illegally reentering after lawful deportation could collaterally attack the prior deportation order. The Court concluded that since *lawful* deportation was a material element of the statutory offense, due process required, in this limited situation, a pretrial review of whether the prior deportation order was lawful. [*Mendoza-Lopez*, 481 U.S.] at 837-38. . . .

> Thus, while the *Mendoza-Lopez* Court admittedly espoused judicial review of administrative actions, the Court reasoned that review is essential when the outcome of the administrative proceeding is used as an element for criminal conviction. *Id.* at 839.

*Smith*, 295 F.3d at 430-31 (emphasis in original).