The UNITED STATES of America

v.

Edward Ian Rawdon BROOKES,
Defendant.

No. CRIM. RWT 05–0369.

United States District Court,
D. Maryland.

Feb. 28, 2006.

---

398

Daphene Rose McFerren, Office of the US Attorney, Greenbelt, MD, for Plaintiff.

*MEMORANDUM OPINION*

TITUS, District Judge.

█ Edward Ian Rawdon Brookes pled guilty on November 18, 2005, to one count of Unauthorized Reentry of a Deported Alien, a violation of 8 U.S.C. § 1326, and came before this Court again on February 16, 2006, for sentencing. Because calculating his Guidelines sentence requires resolving a matter of statutory interpretation that appears to be a question of first impression in this circuit, this Memorandum Opinion explains the calculation.[1] The question is whether a crime that was prosecuted as a misdemeanor by a state government, but is punishable as a felony under the federal Controlled Substances Act, constitutes an "aggravated felony" for purposes of the enhancement in U.S.S.G. § 2L1.2(b)(1)(C). As will be explained below, the Court concludes that the answer is no.

*Background*

Brookes is a national of Antigua who has a long history as a user and dealer of marijuana. As set forth in his Presentence Report (and unchallenged by either party), he has been arrested no less than seventeen times for various marijuana-related offenses. Relevant to the question presented here, he was convicted in the District of Columbia of possession with intent to distribute marijuana on three separate occasions between his first recorded arrest in 1988 and his deportation on April 26, 1996. Under then-current D.C. law, possession with intent to distribute marijuana was a misdemeanor. *See* D.C.Code § 33–522 (1981) (current version at D.C.Code § 48–902.12) (categorizing cannabis as a Schedule V drug); D.C.Code § 33–541 (1981) (current version at D.C.Code § 48–904.01) (setting a maximum penalty of one year in prison and a $10,000 fine for possession with intent to distribute a Schedule V drug).

The sentence for Brookes' offense under the Guidelines is prescribed by U.S.S.G. § 2L1.2. The base offense level under this section is eight; this may then be increased, based on enumerated criteria, depending on the classification of any criminal convictions that occurred before the

1. Whether or not a district court ultimately imposes a sentence as prescribed by the U.S. Sentencing Guidelines, the first step in sentencing is to "properly calculate the sentence range recommended by the Sentencing Guidelines." *United States v. Green,* 436 F.3d 449, 455–56 (4th Cir.2006).

defendant's deportation. The parties agree that an increase of at least four levels is appropriate under § 2L1.2(b)(1)(E), which calls for an increase of four levels if the defendant was deported after "three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses." The dispute involves the applicability of an alternative enhancement provision, U.S.S.G. § 2L1.2(b)(1)(C), which calls for an increase of eight levels if the defendant was deported after "a conviction for an aggravated felony." [2]

*The Definition of "Aggravated Felony"*

The body of U.S.S.G. § 2L1.2 does not define "aggravated felony." Rather, in its Application Notes, it states that "[f]or purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2, app. note 3(A). The cited section of Title 8, in turn, provides that "[t]he term 'aggravated felony' means ... illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43).

Section 802 of Title 21 does not define "trafficking"; the first parenthesis modifies only "controlled substance." Thus, as instructed by *United States v. Wilson*, 316 F.3d 506, 512 (4th Cir.2003), the Court follows yet another cross-reference to 18

U.S.C. § 924(c). Section 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)" ("CSA") or under two other enumerated statutes. Thus, as *Wilson* held, "the two elements of section 924(c)(2) are (1) any felony, that is (2) punishable under the CSA (or one of the other two enumerated statutes)." 316 F.3d at 512.

What is a "felony" for purposes of 18 U.S.C. § 924(c)(2)? Again, the analysis that the Fourth Circuit has applied requires a cross-reference. *See United States v. Amaya–Portillo*, 423 F.3d 427, 431 (2005). "Felony," under the CSA, means "any Federal or State offense classified by applicable Federal or State law as a felony." [3] 21 U.S.C. § 802(13).

At the end of this legal scavenger hunt, then, is a question of statutory interpretation. It is the interpretation of Section 802(13) that determines whether Brookes has been convicted of an "aggravated felony": he has been convicted of an "aggravated felony" only if one of his convictions for possession with intent to distribute marijuana is a "Federal or State offense classified by applicable Federal or State law as a felony."

*Construing 21 U.S.C. § 802(13): Was Brookes Convicted of a "Felony" Under the CSA?*

The parties agree that Brookes' convictions were misdemeanors under *D.C. law*,

**2.** The initial presentence report applied the enhancement under U.S.S.G. § 2L1.2(c)(1)(C), but after conferring with the Court, the probation officer submitted a final report that applied the enhancement under § 2L1.2(c)(1)(E) instead.

**3.** In a vacuum, it might appear more logical to look within Title 18, rather than to the CSA (which is in Title 21), for the definition of "felony" under 18 U.S.C. § 924. However, Title 18's definition was repealed in 1984. *See* 98 Stat. 2027 (1984) (repealing 18 U.S.C. § 1). Although *Wilson* held only that the

section 924(c)(2) definition of "felony" "includ[es] within [its] scope felonies as defined by the very acts [including the CSA] that the statute references," 316 F.3d at 513, the application of the CSA's definition as controlling is compelled by *Amaya–Portillo*. *See* 423 F.3d at 431, 433 (stating that "section 2L1.2(b)(1)(C) directs the Court, albeit circuitously, to the definition of 'felony' in Title 21 U.S.C. 302(13)" and applying only this provision to the definition of "aggravated felony" in U.S.S.G. § 2L1.2(b)(1)(C)).

but that possession with intent to distribute marijuana is (and was) punishable under *federal law* (21 U.S.C. § 841(b)(1)(D)) as a felony. This case represents the fourth of four possible situations that a state conviction might be in with respect to Section 802(13): it might be (1) a state felony punishable under federal law as a misdemeanor; (2) a state misdemeanor punishable under federal law as a misdemeanor; (3) a state felony punishable under federal law as a felony; or (4) a state misdemeanor punishable under federal law as a felony. The Fourth Circuit has construed Section 802(13) in only two of the other situations: situation (1)—the opposite of the instant case—in *Wilson,* and situation (2) in *Amaya–Portillo.*

In *Wilson,* the court considered whether a conviction for simple possession of cocaine that was a felony under Virginia law, but punishable only as a misdemeanor under federal law, fell within the CSA's definition of "felony." 316 F.3d at 512. Observing that the CSA definition "is clear and unambiguous"—presumably, "clear and unambiguous" as to the facts of *Wilson* and once the court followed the convoluted legal path to the CSA provision in the first place—the court held that Wilson's state felony conviction was, by definition, "classified by applicable .... State law" as a felony. *Id.* Thus, "while the CSA would not *punish* Wilson's conduct as a felony, it does *define* it as a felony given the punishment it receives under Virginia law." *Id.* at 513. Accordingly, the conviction was for an aggravated felony, and the enhancement under U.S.S.G. § 2L1.2(b)(1)(C) applied. *Id.* at 514.

*Amaya–Portillo* applied *Wilson's* analysis to a Maryland conviction for simple possession of cocaine that was categorized by state law as a misdemeanor and would also have been a misdemeanor federally, but which was punishable under Maryland law by a prison sentence of more than one year. 423 F.3d at 431. The *Amaya–Portillo* court held that the possible penalty that attaches to an offense is not relevant to the determination of whether it is a "felony" under the CSA; rather, "the application of Section 2L1.2(b)(1)(C) turns upon a state's classification of an offense as a felony or misdemeanor." *Id.* at 432. Because neither state nor federal law categorized Amaya–Portillo's prior offense as a felony, it was not a felony for purposes of the CSA. *Id.*

Of the remaining two situations in which Section 802(13) might be construed, the third—a state-law felony that would also be a felony under federal law—is not before this Court (but presumably is also not a hard case). The instant case is the final situation—a state-law misdemeanor that would have been a felony if prosecuted under federal law. To determine whether it is a "felony" under Section 802(13) and thus an "aggravated felony" under U.S.S.C. § 2L1.2(b)(1)(C), this Court must look outside Fourth Circuit precedents.

In *United States v. Simpson,* 319 F.3d 81 (2002), the U.S. Court of Appeals for the Second Circuit considered a case that was essentially indistinguishable from this one. Neville Simpson, the defendant, had previously been convicted of possession with intent to distribute marijuana under New York law, which, like District of Columbia law, classified the conviction as a misdemeanor. 319 F.3d at 85. As in the instant case, Simpson's crime would have been punishable under the federal CSA as a felony. *See id.* The court followed the same path as the Fourth Circuit from U.S.S.G. § 2L1.2(b)(1)(C) to 21 U.S.C. § 802(13); consequently, it construed the

latter provision in order to determine whether Simpson's conviction was an "aggravated felony." *Id.* The *Simpson* court articulated the Section 802(13) test as follows: "a drug trafficking offense is an 'aggravated felony' when it is: (1) an offense *punishable* under the CSA, and (2) can be [sic] classified as a felony under state *or* federal law." *Id.* (emphasis in original). In other words, the fact that Simpson's marijuana offense *could have been* prosecuted federally, and if it had been, would have been punished as a felony, was enough to render it a "felony" under the CSA and thus an "aggravated felony" under U.S.S.G § 2L1.2(b)(1)(C). *Id.* at 85–86.

In *United States v. Gomez–Ortiz,* 62 F.Supp.2d 508 (D.R.I.1999), the U.S. District Court for the District of Rhode Island considered the same issue and came to the opposite conclusion.[4] Unlike the *Simpson* court, the *Gomez–Ortiz* court focused on the meaning of the word "applicable" in "applicable Federal or State law"; it concluded that " 'applicable Federal or State law' could mean the law that defined the actual offense of conviction or any law that might apply to defendant's conduct." 62 F.Supp.2d at 509–10. In other words, "[t]he dispute is whether federal law looks to the conduct that the defendant committed or to the law that the defendant broke." *Id.* at 510.

The *Gomez–Ortiz* court then analyzed the First Circuit precedents that were analogous to *Wilson.* It noted that in *United States v. Cuevas,* 75 F.3d 778, 783–84 (1st Cir.1996), and *United States v. Restrepo–Aguilar,* 74 F.3d 361, 363–67 (1st Cir.1996), convictions that (as in *Wilson* ) were state-law felonies but could have been charged as federal misdemeanors were categorized as felonies under Section 802(13). *Gomez–Ortiz,* 62 F.Supp.2d at 510. It also noted that the Sentencing Guidelines looked not to conduct, but to convictions, in determining whether the "aggravated felony" enhancement applied at all. *See id.* ("The First Circuit was clear that the Sentencing Guidelines equate a criminal record with the actual convictions. The Circuit looks to the law under which the defendant was convicted, rather than to the defendant's criminal conduct."); *see also* U.S.S.G. § 2L1.2(b)(1)(C) (requiring for an enhancement "a *conviction* for an aggravated felony" (emphasis added)). Finally, it observed that the Guidelines "offer comity to the states and respect their classification of a felony," and that an approach that looks to the state-law classification of a conviction is more deferential to state sovereignty. 62 F.Supp.2d at 510. For these reasons, the court held that the defendant's Massachusetts misdemeanor conviction for possession with intent to distribute marijuana was not an "aggravated felony." *Id.* at 511.

This Court holds that *Gomez–Ortiz* is more persuasive than *Simpson,* and that Brookes' D.C. misdemeanor convictions do not qualify as "felonies" under the CSA or as "aggravated felonies" under U.S.S.G. § 2L1.2(b)(1)(C). The most logical reading of 21 U.S.C. § 802(13) is that an offense is "classified by applicable Federal or State law as a felony" if and only if the law under which the conviction was obtained classifies the conviction as a felony.

---

**4.** Since *Gomez–Ortiz,* U.S.S.G. § 2L1.2 has been amended. At the time, the enhancement for an "aggravated felony" was sixteen levels, not eight as it is today. *See* 62 F.Supp.2d at 508. The differences are not relevant to the analysis of what constitutes an "aggravated felony."

402

The law that is "applicable" to a "Federal offense" is federal law, and the law that is "applicable" to a "State offense" is state law. The statute might have been worded less ambiguously as "any Federal or State offense classified by Federal or State law, respectively, as a felony."

The *Simpson* court's interpretation—which interprets "any Federal or State offense classified by applicable Federal or State law as a felony" as a test of whether the offense "can be classified as a felony under either state *or* federal law," 319 F.3d at 85—effectively writes "applicable" out of the statute. Even if *Simpson* is understood to advocate the alternative reading of "applicable" that *Gomez–Ortiz* rejected—a reading in which "applicable" means "might possibly be applied"—such a reading demands an impractical and illogical hypothetical inquiry. As the *Gomez–Ortiz* court observed, to decide whether a conviction is a felony under this test, "[j]udges would be forced to decide what laws—either federal or in any of the several states—might be applied to the defendant's conduct." *Gomez–Ortiz,* 62 F.Supp.2d at 511.

If this test were to be taken to its logical extreme, a court considering a state misdemeanor conviction would have to inquire not only whether the conduct could have been prosecuted as a federal felony, but also whether the conduct could have been prosecuted under another statute as a *state* felony. This would tend to undermine the effect of prosecutorial discretion in determining the severity of a conviction's consequences. Moreover, a court considering a past *federal* misdemeanor conviction, and applying the federal Sentencing Guidelines while sentencing for a federal offense, would still be forced to inquire as to whether, and in what state, a

state felony conviction might have been brought for the same conduct. The mere fact of a conviction in federal court often would not make this apparent. Perhaps worst of all, a conduct-based (rather than a conviction-based) test would create an anomaly: conduct could be treated as a felony, on the basis of the severity of the conduct rather than any ensuing criminal charges, if it resulted in a misdemeanor conviction but not if no conviction resulted at all; by their terms, the Sentencing Guidelines require a "*conviction* for an aggravated felony." U.S.S.G. § 2L1.2(b)(1)(C) (emphasis added).

The more straightforward test that this Court adopts also comports with the rationale and holdings of *Wilson* and *Amaya–Portillo.* Both cases ultimately classified the convictions at issue in the same way as the original convicting courts: the felony in *Wilson* had been a felony under Virginia law, and the misdemeanor in *Amaya–Portillo* had been a misdemeanor under Maryland law. The *Wilson* court itself implicitly used this court's definition of "applicable" when it described Wilson's conviction as "a felony under the applicable state law." *Wilson,* 316 F.3d at 512. And the *Amaya–Portillo* court, in applying a state's interpretation of whether a conviction was a felony, rather than inquiring as to the length of a possible punishment, identified one of the same core values that this Court's ruling today upholds. Its interpretation—like this Court's—"gives deference to a state's judgment ... as to whether the offense is a felony." *Amaya–Portillo,* 423 F.3d at 427.

■ The Court also concludes that even if the test that this opinion adopts were not the correct one, the rule of lenity would compel the same result. The rule of lenity provides that "where there is ambi-

guity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *see also United States v. Blackburn,* 940 F.2d 107, 109 (4th Cir.1991) ("[T]he rule of lenity applies to the interpretation of the Sentencing Guidelines in the same manner as it applies to the interpretation of criminal statutes."). Although the Fourth Circuit in *Wilson* characterized Section 802(13) as "clear and unambiguous," 316 F.3d at 512, the statute is clear and unambiguous only as to the question presented in *Wilson:* whether a crime that would be prosecuted as a misdemeanor under federal law can nonetheless constitute a "felony" if it is treated as a felony under the laws of a convicting state jurisdiction. As to the question presented here—what to do when the jurisdiction that treats a crime as a felony is *not* the jurisdiction in which the conviction was obtained—the phrase "applicable Federal or State law" fails to provide a "clear and definite" statement, *see Bass,* 404 U.S. at 347, 92 S.Ct. 515, of whether the law of that other jurisdiction is "applicable." As such, the rule of lenity would compel a holding in the defendant's favor even if the Court's reading were not the best one. *See United States v. Payne,* 952 F.2d 827, 830 (4th Cir.1991) (applying the rule of lenity as an alternative holding, in a Sentencing Guidelines context, if the court "believed that the government's interpretation was sufficiently reasonable that [it] w[as] left with an ambiguous statute at the end of the process of statutory construction" (quotation marks omitted)).

*Conclusion*

Section 2L1.2(b)(1)(C) of the Sentencing Guidelines applies if a defendant has "a conviction for an aggravated felony." Because Brookes' convictions were not classified as felonies in the applicable jurisdiction of conviction, they are not "felonies" under 18 U.S.C. § 924(c) nor "aggravated felonies" under the Guideline.

Brookes' appropriate Guidelines sentence therefore includes only a four-level enhancement for three prior misdemeanor convictions that are drug trafficking offenses. *See* U.S.S.G. § 2L1.2(b)(1)(E). With a base level of eight, the four-level enhancement, and a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), Brookes' ultimate offense level is 10. At criminal history category II, this yields a sentencing range of 8–14 months.

For the reasons stated on the record, the Court has concluded that a sentence within the Guidelines range "serves the factors set forth in [18 U.S.C.] § 3553(a)"; that such a sentence comports with statutory limits; and that a sentence at the upper end of the range is appropriate. *See Green,* 436 F.3d 449, 455–56 (4th Cir. 2006). Accordingly, by the accompanying Judgment in a Criminal Case, Brookes is sentenced to fourteen months of imprisonment, with the additional assessments and conditions noted therein.