

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2004

# USA v. Grey

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1448

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Grey" (2004). *2004 Decisions.* Paper 1086.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1086

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1448

UNITED STATES OF AMERICA

v.

CALVIN GREY
a/k/a CALVIN GRAY

Calvin Grey,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 02-00276-01)
Honorable Marvin Katz, District Judge

Submitted under Third Circuit LAR 34.1(a)
January 12, 2004

BEFORE: BARRY, SMITH, and GREENBERG, Circuit Judges

(Filed: January 15, 2004)

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on Calvin Grey's ("Grey") appeal from a

judgment of conviction and sentence entered in this criminal case on February 14, 2003. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

Grey is a citizen of Jamaica who came to the United States on a visa on or about November 1986. On December 20, 1989, Grey pleaded guilty in the Court of Common Pleas of Philadelphia County, Pennsylvania, to statutory rape, in violation of 18 Pa. Const. Stat. Ann. § 3122 (repealed)[1] and corruption of minors, in violation of id. § 6301. The certified records of the Court of Common Pleas reveal that on the day he pleaded guilty, December 20, 1989, the court sentenced Grey to time he already had served, i.e., from November 8, 1989, to December 20, 1989, to 23 months on his statutory rape conviction and five years probation on his corruption of minors conviction. Thus, the sentence was indeterminate with a 23-month maximum. It appears, however, that after Grey pleaded guilty he was released from custody and placed on probation so that his confinement was for about six weeks.

On or about March 30, 1990, the government deported Grey to Jamaica. Grey never since has sought or received permission from the United States Attorney General to reenter the United States. Nevertheless, he unlawfully did reenter the country, an action leading to his indictment on May 9, 2002, for illegally reentering the United States after

---

[1]Section 3122 has been replaced by 18 Pa. Cons. Stat. Ann. § 3122.1 (West 2000).

2

previously being deported in violation of 8 U.S.C. §§ 1326(a), (b)(2).[2]

On October 28, 2002, Grey filed a motion to dismiss the indictment in which he challenged the validity of the 1990 deportation order, alleging that his deportation hearing was fundamentally unfair and thus denied him due process of law. Then, on November 7, 2002, Grey filed a supplemental motion to dismiss the indictment, arguing that he was denied effective representation at the deportation hearing because he was not advised that he might be able to obtain relief from deportation by applying for voluntary departure under 8 U.S.C. § 1254(e) (1982) (repealed).

On November 8, 2002, the district court denied both motions, holding that Grey had not been prejudiced by any alleged deprivation of due process at his deportation hearing in 1990. Grey then entered into a written plea agreement providing for him to plead guilty of illegal entry but preserving his right to challenge the district court's denial of his motion to dismiss the indictment. After the court sentenced him to a 15-month custodial term to be followed by a three-year term of supervised release he appealed.[3] We exercise plenary review over the district court's interpretation and application of 8 U.S.C. § 1326. Gibbs v. Cross, 160 F.3d 962, 964 (3d Cir. 1998).

At the time of his deportation in 1990, 8 U.S.C. § 1251 (1990) provided, in

---

[2]The government discovered Grey was here when he was arrested on narcotics charges.

[3]In his appeal Grey does not challenge the district court's determination that he was not prejudiced by his representative's failure to advise him that he could obtain relief by applying for voluntary departure under 8 U.S.C. § 1254(e) (1982) (repealed). We therefore will not address this issue.

relevant part, that "[a]ny alien in the United States . . . shall, upon the order of the Attorney General, be deported who is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more."

In order to establish the elements of illegal reentry under 8 U.S.C. § 1326, the government must prove that a deportee (1) was arrested for the underlying crime; (2) was subsequently deported for the underlying crime; and (3) reentered the United States without the permission of the United States Attorney General. United States v. DeLeon-Rodriguez, 70 F.3d 764, 766 (3d Cir. 1995). The Supreme Court in United States v. Mendoza-Lopez, 481 U.S. 828, 837-39, 107 S.Ct. 2148, 2155-56 (1987), held that aliens may collaterally challenge an underlying deportation proceeding in a criminal prosecution for illegal reentry. In reaching this result the Court explained that if it allowed a prior deportation to establish conclusively an element of the offense of illegal reentry, in some instances there would be no meaningful judicial review of deportation proceedings that violated an alien's right to due process of law.

The parties agree that in order to determine whether Grey successfully can challenge his underlying deportation order he must satisfy the requirements set forth in 8 U.S.C. § 1326(d), which codified the Supreme Court's holding in Mendoza-Lopez. That section provides:

> **(d) Limitation on collateral attack on underlying deportation order**

4

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that-
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

In his brief, Grey argues that his deportation hearing was deficient in several respects. He maintains that the immigration judge failed to comply with applicable regulations that the Attorney General had prescribed governing deportation hearings, the individual who represented him at the hearing failed to provide effective representation, and he improperly was deprived of an opportunity for judicial review of the deportation order. Nevertheless, even assuming that Grey is correct in all three contentions, he has failed to satisfy the requirement of 8 U.S.C. § 1326(d)(3), i.e., by demonstrating that the entry of the 1990 deportation order was fundamentally unfair.

As stated above, the provision in effect at the time of Grey's deportation hearing in 1990 provided for the deportation of any alien "who is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more." 8 U.S.C. § 1251 (1990). Grey does not argue that his convictions for statutory rape and

5

corruption of minors do not qualify as crimes involving "moral turpitude," and he does not deny that these crimes were committed within five years after his entry into the United States.[4] Grey does maintain, however, that the entry of the 1990 deportation order was fundamentally unfair because he was not "sentenced to confinement or confined . . . for a year or more." 8 U.S.C. § 1251 (1990).

Grey was sentenced to time already served, i.e., from November 8, 1989, to December 20, 1989, to 23 months on his statutory rape conviction. Inasmuch as he actually was incarcerated for only six weeks, Grey contends that he does not satisfy the "year or more" requirement of section 1251. We previously have rejected a parallel argument.

In Bovkun v. Ashcroft, 283 F.3d 166, 171 (3d Cir. 2002), we held that in determining whether the term of imprisonment actually imposed when a sentence specifies a minimum and a maximum sentence satisfies the one-year requirement we should look to the maximum sentence imposed. In this case the state court sentenced Grey to a maximum 23-month term which clearly qualifies as a year or more. Grey attempts to distinguish Bovkun by arguing that inasmuch as his maximum term of incarceration was less than two years, parole authority was vested with the sentencing court rather than the Board of Parole. It is true that when an individual is sentenced to a

---

[4]Three other courts of appeals have held that statutory rape qualifies as a crime of moral turpitude. See Gonzalez-Alvarado v. INS, 39 F.3d 245, 246 (9th Cir. 1994); Castle v. INS, 541 F.2d 1064, 1066 (4th Cir. 1976); Marciano v. INS, 450 F.2d 1022, 1024 (8th Cir. 1971). We agree with these courts.

6

term of less than two years in Pennsylvania, the sentencing court has authority to grant parole without supervision by the Board of Parole and, indeed, that apparently was the situation in <u>Bovkun</u>.[5] Pa. Stat. Ann. tit. 61, § 331.26 (West 1999). But we already have held that it does not matter whether the parole board or the sentencing court has jurisdiction to grant parole for purposes of a federal court determining the length of the sentence imposed upon an alien. <u>United States v. Frias</u>, 338 F.3d 206, 211 n.1 (3d Cir. 2003).

Therefore, even if the immigration judge erred in failing to inform Grey of the one-year period of incarceration requirement for deportation in 8 U.S.C. § 1251 (1990) and Grey's representative was remiss in failing to raise this issue in the immigration proceeding, Grey did not suffer any prejudice. Moreover, Grey was not prejudiced by being deprived of his appellate rights in the deportation proceedings, if such be the case, as an appeal would not have been successful. In short, inasmuch as Grey was convicted on his plea of guilty in the state court of the commission of a crime of moral turpitude and sentenced to confinement for a year or more, his deportation was entirely proper and in no way was it "fundamentally unfair." 8 U.S.C. § 1326(d)(3).

For the foregoing reasons, we will affirm the judgment of conviction and sentence of the district court entered February 14, 2003.

––––––––––

[5]We note that the cases we have examined reflect a practice of the Pennsylvania state courts to impose 23-month maximum sentences, thereby retaining parole authority.

TO THE CLERK:

Please file the foregoing not precedential opinion.


                                        /s/   Morton I. Greenberg
                                              Circuit Judge