

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2004

# USA v. Torres

Precedential or Non-Precedential: Precedential

Docket No. 03-2574

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Torres" (2004). *2004 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-2574

———

UNITED STATES OF AMERICA

v.

JOSE AUGUSTIN TORRES,
a/k/a Juan Diaz, a/k/a Victor Torres,
a/k/a Anthony Rodriguez, a/k/a Joselito
Torres, a/k/a Martin Rodriguez

Jose Augustin Torres,

Appellant

———

On Appeal from the
United States District Court
for the Eastern District of Pennsylvania
(Dist. Court. No. 02-cr-00427)
District Judge:
Honorable Eduardo C. Robreno

———

Submitted Under Third Circuit LAR
34.1(a)
January 23, 2004

Before: ALITO and CHERTOFF,
Circuit Judges, and DEBEVOISE,

District Judge[*]

(Filed: September 7, 2004)

MAUREEN KEARNEY ROWLEY
Chief Federal Defender
DAVID L. McCOLGIN
Supervising Appellate Attorney
ELIZABETH T. HEY
Assistant Federal Defender
Defender Association of Philadelphia
Federal Court Division
Curtis Center,
Independence Square West
Suite 540 West
Philadelphia, PA 19106

Counsel for Appellant

PATRICK L. MEEHAN
United States Attorney
LAURIE MAGID
Deputy United States Attorney
for Policy and Appeals
ROBERT A. ZAUZMER
Assistant United States Attorney,
Senior Appellate Counsel
ANITA EVE
Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

———

[*]    Honorable    Dickinson    R.
Debevoise, Senior United States District
Judge for the District of New Jersey,
sitting by designation.

OPINION OF THE COURT

CHERTOFF, Circuit Judge.

Jose Augustin Torres appeals his conviction for unlawful re-entry into the United States after having been deported. On July 18, 2002, Torres was indicted for illegal re-entry after deportation in violation of 8 U.S.C. § 1326. The indictment also charged that, prior to his removal, Torres had been convicted of an aggravated felony, making him subject to the enhanced penalties set forth in section 1326(b)(2). Torres filed a motion to dismiss the indictment, arguing that the underlying removal order was flawed and could not, therefore, support a conviction for unlawful re-entry. The District Court denied the motion to dismiss. Reserving his right to appeal, Torres pled guilty on February 24, 2003. On May 15, 2003, the District Court sentenced Torres to 27 months imprisonment, three years supervised release and a $100 special assessment. Torres appeals, maintaining that his removal order cannot serve as a predicate to his conviction for unlawful re-entry.

This case presents a question concerning the scope of an alien's right to collaterally attack the removal order that underlies a conviction for unlawful re-entry.

I.

Torres was admitted into the United States on July 14, 1989, as a lawful permanent resident from the Dominican Republic, his native country. On August 30, 1993, Torres was convicted of a felony drug trafficking offense in the Superior Court of New Jersey, Middlesex County. Torres voluntarily returned to the Dominican Republic but on May 23, 1998, he attempted to re-enter the United States.

Torres's 1993 conviction rendered him removable.[1] INS officials therefore detained Torres at the point of his 1998 entry and placed him in removal proceedings. In July of 1998, a hearing was held before an Immigration Judge (IJ) at which Torres was not represented by counsel. The IJ informed Torres of his rights during and after the hearing, including his right to appeal the outcome of his removal proceedings. The IJ then found Torres removable as charged, and ordered him removed to the Dominican Republic at Torres's request. Torres accepted the IJ's decision, and did not appeal the IJ's determination. At no time

---

[1] Under recent amendments to the Immigration and Nationality Act, the term "removal" embraces concepts of both "deportation" and "exclusion." See Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, Div. C, § 308, 1996 U.S.C.C.A.N. (110 Stat.) 3009-620, 3009-621; 8 U.S.C. § 1229a. Saying that Torres was "removable" is equivalent to saying that he was "deportable."

during the hearing, however, did the IJ inform Torres that he was eligible for any form of discretionary relief from removal. Torres was removed on September 2, 1998. Despite his removal and without authorization, Torres was found yet again in the United States on February 25, 2002. Torres's indictment under 8 U.S.C. § 1326 followed on July 18, 2002.

Before the District Court, Torres moved to dismiss the indictment contending that the order of removal upon which it was based was flawed. Torres argued that, during his 1998 removal proceedings, he was entitled to be considered for discretionary relief from removal under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1995) (repealed by Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, Div. C, § 304(b), 1996 U.S.C.C.A.N. (110 Stat.) 3009-597).[2] Torres attributed the IJ's belief that Torres was not eligible for 212(c) relief as being based on an erroneous conclusion of law that was later corrected by the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001). Further, Torres asserted that the IJ's failure to inform him of his eligibility for discretionary relief rendered that removal proceeding unconstitutional—and therefore an

inappropriate predicate for a conviction under 8 U.S.C. § 1326. See United States v. Mendoza-Lopez, 481 U.S. 828 (1987).

After the District Court held an initial hearing on Torres's motion, Torres sought to admit expert testimony on his motion. The District Court, finding the testimony to be irrelevant, denied Torres's request to admit expert testimony. Simultaneously, the District Court denied Torres's motion to dismiss the indictment.[3] Torres then pled guilty to the indictment, subject to his right to appeal. The District Court imposed sentence and, soon after, issued a written opinion explaining its decision to deny Torres's motion to dismiss. Torres timely appealed.

We have jurisdiction under 28 U.S.C. § 1291, and review this issue of law *de novo*. See Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197,

---

[2] The discretionary relief from removal provided for in 8 U.S.C. § 1182(c) was commonly referred to as "212(c) relief." For convenience, we will, occasionally, use that term.

[3] We note that, in the wake of St. Cyr, only one Circuit has adopted the position Torres advocates. Compare United States v. Aguire-Tello, 353 F.3d 1199, 1207-10 (10th Cir. 2004) (en banc), and United States v. Wilson, 316 F.3d 506, 509-511 (4th Cir. 2003), and United States v. Mendoza-Mata, 322 F.3d 829, 832 (5th Cir. 2003), and United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002), and United States v. Roque-Espinoza, 338 F.3d 724, 728 (7th Cir. 2003), with United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1051 (9th Cir. 2004).

3

202 (3d Cir. 1998) (exercising plenary review of legal issue of statutory construction); United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir. 1995) (holding that questions of constitutional waiver are reviewed *de novo*).

## II.

Torres's 1998 removal order was an element of his offense of illegal re-entry. See 8 U.S.C. § 1326. According to Torres, at the time of his 1998 removal proceeding, he was wrongly denied consideration for 212(c) relief from removal. In order to address Torres's challenge, it is necessary for us to briefly rehearse the recent history of the immigration laws.

## A.

The 1952 INA contained a provision excluding from the United States aliens convicted of the illicit traffic in narcotics. See 66 Stat. 182-187; see also St. Cyr, 533 U.S. at 294-95. The same provision, which was section 212(c) of the INA, granted the Attorney General discretion to waive removal in the case of lawful permanent residents who had resided in the United States for at least seven years, so long as they had served less than five years in prison for an "aggravated" felony (separately defined at 8 U.S.C. § 1101(a)(43) (1995)):

> Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of [removal],

and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

See 66 Stat. at 187 (codified at 8 U.S.C. § 1182(c) (1995)); see also St. Cyr, 533 U.S. at 294-95. Thus, for aggravated felonies, the critical threshold for eligibility for 212(c) relief was a sentence below five years.

In 1996, Congress eliminated the Attorney General's discretion under INA section 212(c) to waive removal for aliens excludable for having committed even non-aggravated controlled substance offenses. See Anti-Terrorism and Effective Death Penalty Act (AEDPA) § 440(d), Pub. L. No. 104-132, 110 Stat. 1277; Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA) § 304(b), Pub. L. No. 104-208, 110 Stat. 3009-597. The five-year threshold was also thereby eliminated. The question soon arose whether the 1996 elimination of the Attorney General's discretion operated retroactively. That is, in the wake of AEDPA and IIRIRA, did the Attorney General retain discretion to grant

4

212(c) relief from removal for aliens whose non-aggravated removable offense occurred prior to the change in the law, but whose removal had not yet been effected?

The first challenge to retroactive application of this broader preclusion of 212(c) relief came from aliens who had pled guilty to aggravated felonies prior to the enactment of AEDPA and IIRIRA but who served less than five years imprisonment. This group of aliens would have maintained the possibility of 212(c) relief if they faced removal before the effective dates of AEDPA and IIRIRA. Seeking to retain their opportunity for 212(c) relief after the new laws became effective, these aliens argued, in part, that they had entered pleas of guilty to the aggravated felonies in an effort to keep the sentence imposed below the five-year prison term threshold enumerated in 8 U.S.C. § 1182(c). Thus, they had pled guilty with the expectation under the former law that, despite their felony convictions, they would remain eligible for discretionary relief from removal. That being so, it would be unfair and unconstitutional to retroactively apply the elimination of 212(c) discretionary relief by AEDPA and IIRIRA against them.

The Attorney General disagreed. See In re Soriano, 21 I. &. N Dec. 516, Int. Dec. 3289 (BIA 1996). Eventually, so did a number of the Courts of Appeals. See, e.g., DeSousa v. Reno, 190 F.3d 175, 186-87 (3d Cir. 1999); Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 306-08 (5th Cir 1999). From 1996-2001,

Soriano and the Courts of Appeals decisions that followed it took the position that the elimination of 212(c) relief enacted by AEDPA and IIRIRA acted retroactively; that is, 212(c) relief was not available to any criminal alien whose removal would be effected after the effective dates of AEDPA and IIRIRA.

In 2001, the Supreme Court resolved the question through an appeal from a denial of a writ of habeas corpus. See St. Cyr, 533 U.S. at 315. The Court reversed Soriano, and held that the elimination of 212(c) relief effected by AEDPA and IIRIRA was not retroactive.[4] Thus, the Court explained, 212(c) relief remained available on the same terms after the effective dates of AEDPA and IIRIRA to aliens who pled guilty before AEDPA

---

[4] St. Cyr, like Torres, Soriano and many of the other aliens who had challenged whether AEDPA and IIRIRA could retroactively eliminate 212(c) relief, had pled guilty to the offense that rendered him removable. St. Cyr, 533 U.S. at 293. The Supreme Court found this fact significant because it was at least possible that St. Cyr had entered his plea in reliance on the availability—and likely receipt—of 212(c) relief to avoid removal. Id. at 321-24. We have recently held that AEDPA and IIRIRA could not act retroactively to eliminate 212(c) relief even for an alien whose removable offense conviction was secured after the alien rejected a plea agreement in favor of trial. See Ponnapula v. Ashcroft, 373 F.3d 480, 494-96, 501 (3d Cir. 2004).

and IIRIRA.

## B.

Because of the timing of Torres's narcotics convictions and subsequent removal, he was wrongly precluded from seeking 212(c) relief because of the then-prevailing view that AEDPA and IIRIRA applied retroactively. In 1993, Torres pled guilty to committing a drug offense and was sentenced to less than five years' imprisonment. Under the law at that time, Torres was removable, see 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1995), but also eligible to be considered for 212(c) relief. See 8 U.S.C. § 1182(c) (1995).[5]

But Torres's removal proceedings did not begin until 1998—after the effective dates of AEDPA and IIRIRA. At that time, the view binding on the IJ adjudicating Torres's removal proceeding was that aliens like Torres were subject to the post-AEDPA/IIRIRA rules, and therefore were not eligible for 212(c) relief. Presumably for this reason, the IJ did not inform Torres that 212(c) relief from removal might be available to him.

---

[5] According to statistics maintained by the Executive Office of Immigration Review, 212(c) relief was granted in more than half the cases to which it applied. See Julie K. Rannik, The Anti-Terrorism and Effective Death Penalty Act of 1996: A Death Sentence for the 212(c) Waiver, 28 U. Miami Inter-Am. L. Rev. 123, 150 n.80 (1996); see also St. Cyr, 533 U.S. at 296 n. 5.

Torres argues that the IJ's failure to consider the availability of 212(c) relief was a fundamental error because St. Cyr later established that, at the time he was ordered removed, Torres was actually eligible to be considered for 212(c) relief. Importantly, Torres also asserts that the IJ's error of law denied him an opportunity for judicial review of his removal order. According to Torres, his opportunity to seek judicial review of the IJ's decision was effectively precluded by the IJ's failure to disclose that Torres would have been eligible for consideration for discretionary relief but for the reigning interpretation of AEDPA and IIRIRA. Torres reasons that, acting *pro se*, he would have no reason to know that, but for Soriano, he was eligible for discretionary relief. Had the IJ so informed him, he might have sought judicial review—in the BIA or in the federal courts—in an effort to change the law. Torres therefore argues that he should be permitted, in this criminal action for illegal re-entry, to challenge the IJ's conduct during his removal proceeding.

## III.

May Torres collaterally attack the 1998 removal order that satisfies an element of his conviction for illegal re-entry?

An alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 may challenge the underlying removal order only under certain circumstances. Mendoza-Lopez, 481 U.S. at 839. In Mendoza-Lopez, two Mexican nationals

6

were separately arrested in Nebraska, transported to Colorado, and placed in a group deportation hearing where they appeared *pro se*. Id. at 830-31. At the hearing, the IJ: (1) did not inform them of their right to counsel; (2) discussed, at least to some extent, their right to seek suspension of deportation; and (3) accepted waiver of their appeal rights. See id. at 831 & n.4. The aliens were ordered deported to Mexico, and that deportation order was effected on November 1, 1984. Id. at 830. At the time of their deportation, the two aliens were provided with a copy of an INS form informing them that a return to the United States without permission would constitute a felony. Id.

Just over a month later, both aliens were again separately arrested in Nebraska. Id. Both were then indicted for criminally violating 8 U.S.C. § 1326, and both responded by challenging their indictment on the ground that they were denied fundamentally fair deportation hearings. Id. at 831. They alleged that their deportation proceeding was fundamentally unfair because the IJ "inadequately informed them of their right to counsel . . . and accepted their unknowing waivers of the right to apply for suspension of deportation." Id.[6] The

_____

[6] Although the Supreme Court's holding was premised on the IJ's acceptance of the aliens' unknowing waiver of their *appeal rights*, it does not appear from the Court's recitation of the procedural history of the case that the

District Court and the Eighth Circuit agreed in part, permitting the aliens' collateral challenge at the threshold.

The Supreme Court, at the Government's request, assumed that the deportation proceeding was fundamentally unfair, focusing instead on the threshold question of whether an alien indicted for criminally violating 8 U.S.C. § 1326 could collaterally challenge the deportation order satisfying an element of that offense. Id. at 834 & n.8, 839-40. The Court found that nothing in section 1326 permitted an alien to bring such a collateral attack. See id. at 837.

But, the Court concluded, due process requires that a "collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted" when the underlying proceeding is "fundamentally unfair" and when "the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." Id. at 839. Applying that rule to the case at hand, the Court concluded that the IJ's conduct—not adequately explaining suspension of deportation and accepting a waiver of the aliens' appeal right despite that inadequate explanation—effectively denied the aliens their right to judicial review. Id. at 840. Coupled with the Government's concession that the proceedings were fundamentally unfair, the Court concluded that the aliens'

_____

aliens alleged error on that basis. Id. at 831, 839-41.

7

collateral challenge must be sustained. Id. at 842.

Congress later codified the Court's holding in Mendoza-Lopez at 8 U.S.C. § 1326(d), which states:

> (d) Limitation on collateral attack on underlying [removal] order
>
> In a criminal proceeding under this section, an alien may not challenge the validity of the [removal] order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that–
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the [removal] proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These three requirements are listed in the conjunctive, meaning that all three must be met before an alien will be permitted to mount a collateral challenge to the underlying removal order. See United States v. Roque-Espinoza, 338 F.3d 724, 728 (7th Cir. 2003); United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003); United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002).

In 1998, Torres did not pursue his right to appeal the removal order underlying his current criminal conviction. The Government does not argue that he failed to exhaust his administrative remedies, as required by section 1326(d)(1). The only questions for us, therefore, are whether, at the time of his removal, Torres was denied his opportunity for "meaningful judicial review" and whether entry of the order was "fundamentally unfair." See 8 U.S.C. §§ 1326(d)(2)-(3).

A.

Torres's contention that he was denied meaningful judicial review is threefold. First, he contends that all avenues of judicial review—other than administrative review—were legally foreclosed to him, presumably by the operation of either 8 U.S.C. § 1252(a)(2)(B) or (C), which bars direct review of the removal proceedings of certain felons. Second, he argues that, because the predominant view at the time of his removal was that 212(c) discretionary relief was not available to aliens in his situation, judicial review from his removal order was meaningless, even if technically available. Third, Torres

8

argues that, even if avenues of meaningful review were available to him, he was denied review because, by not being informed that discretionary 212(c) relief might be available to him, he was denied the opportunity to exercise considered judgment in waiving his review rights.

With respect to Torres's first contention, the Government does not contest that one of 8 U.S.C. § 1252(a)(2)(B) or (C) would have precluded Torres from seeking direct review of his removal order in the Fifth Circuit (where his removal proceedings took place).

> Those statutory provisions say:
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law, no court shall have jurisdiction to review–
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

> (C) Orders against criminal aliens
>
> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

Id. In short, the two provisions act in concert to preclude direct judicial review of most discretionary immigration determinations of the Attorney General, and *all* immigration determinations with respect to aliens removable for having committed certain criminal offenses, including controlled substance offenses. See Bakhtriger v. Elwood, 360 F.3d 414, 419 (3d Cir. 2004).

The Government argues, nevertheless, that Torres had—and waived—an absolute right to appeal his removal order to the BIA. Torres, for his part, argues that such an appeal would have been futile in light of Soriano. 21 I. & N. Dec. at 518.

This difference of opinion is beside the point. Even if BIA review had been available, <u>Mendoza-Lopez</u> clearly contemplates that "judicial review" include review beyond the administrative context. 481 U.S. at 837-39. <u>Mendoza-Lopez</u> unambiguously differentiated between an alien's administrative removal proceeding on the one hand, and judicial review on the other, stating:

> Our cases establish that where a determination made in an *administrative proceeding* is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some meaningful review* of the administrative proceeding. . . . This principle means at the very least that where the defects in an *administrative proceeding* foreclose *judicial review* of that proceeding, an alternative means of obtaining *judicial review* must be made available before the administrative order may be used to establish conclusively an element of a criminal offense. . . . Depriving an alien of the right to have the disposition in a *deportation hearing* reviewed in a *judicial forum* requires, at a minimum, that review be made available in

> any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

<u>Id.</u> (internal footnotes and citations omitted, additional italics added). Torres's right to appeal to the BIA is, therefore, insufficient to establish that he was afforded meaningful judicial review.

The Government contends alternatively that the availability to Torres of habeas corpus afforded him the opportunity for judicial review required by 8 U.S.C. § 1326(d)(1).[7] After all, the

---

[7] Torres disputes that habeas corpus was actually available to him. At the time of Torres's removal proceedings, a circuit split was developing over whether AEDPA and IIRIRA eliminated recourse to habeas corpus for aliens removable for having been convicted of felonies. The Supreme Court eventually resolved that split, holding that AEDPA and IIRIRA did not eliminate a criminal alien deportee's recourse to habeas corpus. <u>See</u> <u>St. Cyr</u>, 533 U.S. at 314; <u>Bakhtriger</u>, 360 F.3d at 419-20. But before <u>St. Cyr</u>, the Fifth Circuit was among those Circuits holding that AEDPA and IIRIRA eliminated habeas corpus jurisdiction in so-called criminal alien removal cases. <u>See</u> <u>Max-George v. Reno</u>, 205 F.3d 194, 198 (5th Cir. 2000). <u>Max-George</u>, however, was not decided until well after Torres's removal proceedings were completed. At the time of Torres's removal proceedings,

10

Government argues, that is the path Enrico St. Cyr employed in the eponymous Supreme Court case to obtain the very relief Torres now contends was denied to him. See St Cyr, 533 U.S. at 314. The District Court here accepted the Government's reasoning, following a growing number of federal courts holding that the availability to an alien of habeas corpus relief affords meaningful judicial review. See, e.g., Roque-Espinoza, 338 F.3d at 729; United States v. Gonzalez-Roque, 301 F.3d 39, 49-50 (2d Cir. 2002).[8]

---

the closest Fifth Circuit precedent held that the transitional rules of AEDPA and IIRIRA did *not* eliminate all habeas review for criminal aliens. See Nguyen v. INS, 117 F.3d 206, 207 (5th Cir. 1997); Williams v. INS, 114 F.3d 82, 84 (5th Cir. 1997). To be sure, Williams held that AEDPA and IIRIRA precluded review of claims that 212(c) relief should have been granted as a matter of discretion. 114 F.3d at 84. But no Fifth Circuit case held that habeas review was unavailable to assert a constitutional or statutory challenge to the retroactive elimination by AEDPA and IIRIRA of 212(c) relief. As such, at the time of his removal, Torres had the right to petition the Fifth Circuit federal courts for a writ of habeas corpus.

[8] The District Court based its reasoning, in part, on an unpublished decision of this Court. See United States v. Fellows, 50 Fed. Appx. 82, 83 (3d Cir. Oct. 29, 2002) (not precedential). To be sure, in Fellows we noted, in *dictum*, that

The District Court adopted an eminently sensible reading of the statute. See Roque-Espinoza, 338 F.3d at 729; Gonzalez-Roque, 301 F.3d at 49-50. As a practical matter, the availability of habeas relief would have adequately accommodated Torres's interest in having his challenges—at least those made on statutory or constitutional grounds—reviewed by a federal court.

The difficulty with the District Court's approach, however, is linguistic. For the term "judicial review" as used in another part of the INA has now been interpreted by the Supreme Court to be limited to direct review, and to *exclude* habeas review. See St. Cyr, 533 U.S. at 311-12.[9] In St. Cyr, the court confronted

---

the alien's challenge to his underlying removal order was likely to fail because—having actually taken an appeal to the BIA but then opting not to pursue his argument farther—he had not been denied meaningful judicial review. In our discussion, we noted that the alien abandoned habeas corpus, among other avenues for seeking relief. We did not hold, however, that the availability of habeas corpus meant that Fellows had been afforded "meaningful judicial review" or even that habeas corpus *was* judicial review. See id. at 84-85.

[9] Although section 1252 uses both the terms "judicial review" and "jurisdiction to review" to refer to court review, the St. Cyr Court treated them as synonymous and so will we. See 533 U.S.

8 U.S.C. § 1252, several provisions of which literally proscribed "judicial review" of the removal proceedings of aliens convicted of certain crimes. At least in part to avoid invalidating that provision on constitutional grounds, see 533 U.S. at 299-300, the Court held that the "judicial review" precluded in section 1252 of the statute meant only direct review and not habeas review.

If that is the definition of "judicial review" in 8 U.S.C. § 1252, does it follow that the identical term in 8 U.S.C. § 1326(d) must mean the same thing, so that the availability to an alien of habeas review at the time of removal is not the sort of "judicial review" that bars collateral attack on the alien's removal order in an action for criminal re-entry?

There is something to be said for reading the terms differently in these two parts of the same statute. See Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932). As a matter of reality, section 1326(d), which sets forth the conditions under which an alien may collaterally attack his removal order, was a codification of the Supreme Court's decision in Mendoza-Lopez. See United States v. Grey, 87 Fed. Appx. 254, 256 (3d Cir. 2004) (not precedential); United States v. Copeland, __ F.3d __, 2004 WL 1588088, at *4 (2d Cir. July 16, 2004); United States v. Wilson, 316 F.3d at 515 n.1 (Motz, J., concurring) (citing to

legislative history); United States v. Lopez-Vazquez, 227 F.3d 476, 484 n.13 (5th Cir. 2000); United States v. Estrada-Torres, 179 F.3d 776, 780 (9th Cir. 1999) overruled on other grounds by United States v. Rivera-Sanchez, 247 F.3d 905, 909 (9th Cir. 2001). Mendoza-Lopez expressly observed that "any alien held in custody pursuant to an order of deportation may obtain judicial review of that order in a habeas corpus proceeding." 481 U.S. at 836-37. Where a congressional provision implements a Supreme Court ruling, there is a compelling reason to adopt an operative definition used in that ruling. See Slack v. McDaniel, 529 U.S. 473, 481 (2000).

Furthermore, realism compels us to acknowledge that when Congress used the term "judicial review" in enacting section 1326(d), it may not have anticipated that five years later the Supreme Court would narrowly construe the same phrase in the context of section 1252 to exclude habeas review. See St. Cyr, 533 U.S. at 330 (Scalia, J., dissenting). Thus, we cannot confidently assert that Congress "intended" that the term "judicial review" be defined identically in both sections.

In fact, the St. Cyr Court's interpretation of the phrase "judicial review" in section 1252 was strongly affected by the canon of constitutional avoidance, see 533 U.S. at 300, 305, which impels a court to narrow statutory language when necessary to confronting a statutory clash with the constitution. See, e.g., Crowell v. Benson, 285 U.S. 22, 62 (1932); United States v. Bishop, 66 F.3d

at 311. But see 533 U.S. at 330 (Scalia, J., dissenting).

12

569, 587 (3d Cir. 1996). The Court believed that if the preclusion of judicial review under section 1252 were read broadly to *include* preclusion of habeas review, the resulting bar might amount to an unconstitutional suspension of habeas corpus. See St. Cyr, 533 U.S. at 314. We need not import St. Cyr's narrow interpretation of "judicial review" into another provision in the statute where there is no such issue of constitutional avoidance.

On the other hand, we acknowledge the argument in favor of construing the term "judicial review" in section 1326(d) as we construe the same term in section 1252 after St. Cyr. As a general canon of construction, the same words in the same statute are interpreted in the same way. See C.I.R. v. Ridgeway's Estate, 291 F.2d 257, 259 (3d Cir. 1961). And it is not nonsensical to interpret section 1326(d) as requiring direct judicial review—and not merely habeas review—to foreclose a later collateral attack on the original removal. For, as we have held, the scope of direct review is broader than the scope of habeas review. See Bakhtriger, 360 F.3d at 424. Congress could have intended that collateral review be foreclosed only by the fuller form of prior court review afforded by direct appeal, although frankly we see no evidence that Congress had this distinction in view when it enacted section 1326(d).[10] See H.R. Conf. Rep. No. 104-

---

[10] This also strains the literal notion of legislative intent pretty far, since it assumes that, in 1996, Congress foresaw

518, at 119 (1996), reprinted in 1996 U.S.C.C.A.N. 924, 952.

At any rate, we need not conclusively resolve what suffices to constitute judicial review under section 1326(d). Torres's collateral challenge suffers from a more obvious defect—he cannot establish that his removal order was "fundamentally unfair" as required by section 1326(d)(3). We will therefore assume, *arguendo*, that Torres was denied a meaningful opportunity for judicial review.

### B.

Of the seven published cases factually similar to this one decided by the Courts of Appeals in the wake of St. Cyr, most have been decided on the ground that the alien failed to establish that the underlying removal proceeding was fundamentally unfair.[11] Compare Aguire-Tello, 353 F.3d at 1207-10, and Wilson, 316 F.3d at 509-11, and Mendoza-Mata, 322 F.3d at 832, and Lopez-Ortiz, 313 F.3d at 231, and United States v. Leon-Paz, 340 F.3d 1003, 1007 (9th Cir. 2003) (remanding for findings on whether alien

---

developments more than five years later in St. Cyr and its progeny.

[11] Mendoza-Lopez does not compel a contrary result. There, based on the Government's concession, the Supreme Court *assumed* that the proceeding was fundamentally unfair. 481 U.S. at 839-40 & n.17. We need not make the same assumption here.

13

had established prejudice and, therefore, fundamental unfairness), with Ubaldo-Figueroa, 364 F.3d at 1051 (dismissing indictment and holding that alien had successfully challenged underlying removal order),[12] and Roque-Espinoza, 338 F.3d at 728 (upholding conviction because alien was afforded meaningful judicial review).

This Court has not yet had occasion to construe the term "fundamental[] unfair[ness]" as it is used in section 1326(d)(3). We must determine, therefore, what must be shown in order to establish that a removal proceeding was fundamentally unfair within the meaning of 8 U.S.C. § 1326(d)(3).

In measuring whether an alien's removal proceeding was "fundamentally unfair," most circuits ask whether the alien was denied due process. See Ubaldo-Figueroa, 364 F.3d at 1047-48; Aguire-Tello, 353 F.3d at 1204; Wilson, 316 F.3d at 510; Lopez-Ortiz, 313 F.3d at 230-31; Fernandez-Antonia, 278 F.3d at 159. We agree that "[f]undamental fairness is a

---

[12] But see Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169, 1172-73 (9th Cir. 2001) (dismissing habeas attack on removal order underlying reinstatement of removal, questioning whether the Ninth Circuit's decision consonant with St. Cyr operated retroactively, and concluding that alien was afforded meaningful judicial review).

question of procedure."[13] Lopez-Ortiz, 313 F.3d at 230.

As the Supreme Court and this court have repeatedly observed, removal proceedings are civil in nature. See Harisaides v. Shaughnessy, 342 U.S. 580, 594 (1952); Perez v. Elwood, 294 F.3d 552, 557 (3d Cir. 2002). Aliens in removal proceedings are entitled to due process, though the procedural protections accorded to them in that context measure less than the panoply available to a criminal defendant. See Dia v. Ashcroft, 353 F.3d 228, 238-39 (3d Cir. 2003) (en

---

[13] Also, *every* Circuit to have considered the requirements for a successful collateral challenge to a removal order has held that the alien must make some showing that prejudice has resulted—i.e., whether the alien could realistically have expected that the Attorney General would exercise discretion to give the alien relief from removal. See Aguire-Tello, 353 F.3d at 1207-10; Leon-Paz, 340 F.3d at 1005; Wilson, 316 F.3d at 510; Mendoza-Mata, 322 F.3d at 832; Fernandez-Antonia, 278 F.3d at 158 (collecting cases); United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997); United States v. Perez-Ponce, 62 F.3d 1120, 1122 (8th Cir. 1995); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994); United States v. Holland, 876 F.2d 1533, 1536 (11th Cir. 1989). Since we find no fundamental unfairness, we have no reason to reach the issue of whether section 1326(d) requires a showing of prejudice.

14

banc); Lopez-Ortiz, 313 F.3d at 230. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted); see also Dia, 353 F.3d at 239. More specifically, in the removal context, "due process requires that an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." Lopez-Ortiz, 313 F.3d at 230 (citing Kwong Hai Chew v. Colding, 344 U.S. 590, 597-98 (1953)). Torres does not contend he was denied any of these.

Rather, Torres contends that his removal proceeding was rendered fundamentally unfair by the IJ's erroneous conclusion—in accordance with the then-reigning interpretation of the law—that Torres was not eligible for discretionary relief. Torres essentially argues that the IJ's error of law rose to the level of a due process violation. We disagree.

Without more, an error of law will ordinarily not rise to the level of a due process violation.[14] In the context of federal habeas corpus review of state criminal proceedings, for example, the Supreme Court and this Court have repeatedly held that "mere error[s] of state law [do not amount to] a denial of due process." Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted); Smith v. Zimmerman, 768 F.2d 69, 73-74 (3d Cir. 1985). Similarly, while we have reversed verdicts due to legal error that occurred at a civil trial, it is not generally part of our conclusion that the error rose to the level of a violation of due process. See, e.g., Ambrose v. Township of Robinson, Pa., 303 F.3d 488 (2002) (failure to grant judgment as a matter of law); Becker v. ARCO Chem. Co., 207 F.3d 176 (3d Cir. 2000) (improper admission of evidence); Bohler-Uddenholm Am., Inc. v. Ellwood Group., Inc., 247 F.3d 79, 100-02 (3d Cir. 2001) (jury instruction).

In fairness to Torres, he challenges not just the IJ's legal conclusion, but also the consequences that flowed from it. By definition, when the IJ concluded that Torres was not eligible for 212(c) relief, he did not consider Torres for that relief. Torres alleges fundamental unfairness because he maintains that he had a due process liberty interest in being considered for 212(c) relief. We disagree.

At least three circuits have held that, because discretionary relief is necessarily a matter of grace rather than of right, aliens do not have a due process liberty interest in consideration for such relief. See Lopez-Ortiz, 313 F.3d at 231; Oguejiofor v. Attorney General, 277 F.3d 1305, 1309 (11th Cir. 2002); Smith v.

---

[14] Indeed, the IJ's understanding of the law was not erroneous at the time. We are extremely reticent to treat as fundamentally unfair an administrative official's failure to predict that binding law will change.

Ashcroft, 295 F.3d 425, 429-30 (4th Cir. 2002). The possibility that the IJ would have granted 212(c) relief in Torres's case was speculative at best. 8 U.S.C. § 1182 did not set out criteria for determining whether relief from removal was appropriate in a given case. Rather, it left to the IJ's sole discretion whether to grant that relief. Section 1182 was, therefore, entirely a "piece of legislative grace, . . . convey[ing] no rights[ and] no status." Lopez-Ortiz, 313 F.3d at 231 (internal quotations omitted). It was not the kind of statute that "create[d] a vested liberty or property interest." Smith, 295 F.3d at 429. Even if Torres had presented a most sympathetic and compelling case for granting section 212(c) relief, nothing would have required the IJ to actually grant that relief.

To be sure, a meaningful distinction may exist between the claim that an alien has a due process interest in being *considered* for available discretionary relief on the one hand, and the very different claim that an alien has a due process interest in the *favorable exercise* of that relief.[15] Thus, Torres can argue that, although he had no right to the favorable exercise of 212(c) relief, he retained a due process interest in being considered for that relief. The contention has some superficial support: A prisoner may have no right to the favorable exercise of parole while at the same time in some circumstances he may have a due process interest in *consideration* for parole. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Roque Espinoza, 338 F.3d at 729-30. On closer inspection, however, the parole cases actually refute any contention that Torres had a protectible interest in being considered for discretionary relief.

In Greenholtz, the Supreme Court squarely held that there is no constitutional right to parole. 442 U.S. at 7. The Court specifically held that the possibility of early release "provide[d] no more than a mere hope that the benefit will be obtained. . . . , a hope which is not protected by due process." Id. at 11 (internal citations omitted). Where, however, a state creates a parole system that statutorily mandates release unless specified conditions are met, a prisoner eligible for parole consideration may be entitled to certain due process protections. See id. at 12; Frey v. Fulcomer, 132 F.3d 916, 925 n.7 (3d Cir. 1997); Walker v. Prisoner Review Bd., 769 F.2d 396, 400 (7th Cir. 1985). As we stated in Frey, therefore,

> the Greenholtz line of decisions stands for the proposition that state-created liberty interests will be found when the state (1) establishes substantive predicates to guide official decisionmaking, and (2) uses explicit mandatory

---

[15] The Seventh Circuit has noted this distinction, see Roque Espinoza, 338 F.3d at 729-30, but no circuit has yet considered whether it has merit when applied to section 212(c).

16

language in its regulations directing the decisionmaker to reach a particular outcome if the substantive predicates are present.

Frey, 132 F.3d at 925 n.7.

Section 212(c) uses no "explicit mandatory language" that could create in an alien any protectible expectation of entitlement to relief. Instead, relief under section 212(c) falls squarely within what the Court in Greenholtz described as a "mere hope" category of relief.[16] Unlike

---

[16] The language of section 212(c) stands in stark contrast to the statutory language that the Court in Greenholtz held created an expectation of relief, which provided:

> "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, *it shall order his release unless* it is of the opinion that his release should be deferred because: (a) There is a substantial risk that he will not conform to the conditions of parole; (b) His release would depreciate the seriousness of his crime or promote disrespect for law;

the parole statute at issue in Greenholtz, section 212(c) sets forth no presumption in favor of relief. It speaks merely to the Attorney General's "discretion." As the Fifth Circuit appropriately observed in Lopez-Ortiz, section 212(c) is a matter of "legislative grace." 313 F.3d at 231 (internal quotations omitted). Thus, a careful reading of Greenholtz and its progeny reinforces our view that the denial of consideration here does not violate due process with regard to a protectible liberty interest. We agree with our sister circuits that have held no fundamental unfairness in failing to consider an alien for 212(c) relief.

Finally, although the IJ erroneously concluded that Torres was ineligible to be considered for 212(c) discretionary relief, the IJ did inform Torres of the reasons for the Government's charge that Torres was removable, did provide him an

---

> (c) His release would have a substantially adverse effect on institutional discipline; or
> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date."

Greenholtz, 442 U.S. at 11 (quoting Neb. Rev. Stat. § 83-1,114(1) (1976)) (emphasis added).

17

opportunity to present a defense, did secure the waiver of Torres's defense and appeal rights, and did grant Torres's request to be deported to his native country. The IJ's conduct in totality did not deny Torres due process.

Because Torres cannot establish that his removal proceeding was fundamentally unfair within the meaning of 8 U.S.C. § 1326(d), his attempt to challenge the removal order underlying his conviction for illegal re-entry into the United States fails.

## IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

18