UNITED STATES of America

v.

Johnny Joseph PIERRE a/k/a Francois Jean a/k/a Joseph Jean–Paul Johnny Joseph Pierre, Appellant.

No. 06–4183.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 10, 2008.

Filed: April 17, 2008.

George S. Leone, Steven G. Sanders, Office of United States Attorney, Newark, NJ, for Appellee.

Timothy M. Donohue, Arleo & Donohue, West Orange, NJ, for Appellant.

Before: M. SMITH, HARDIMAN and ROTH, Circuit Judges.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Johnny Pierre was convicted of illegal reentry in violation of 8 U.S.C. § 1326(d) and was sentenced to 95 months in prison. He appeals both his conviction and sentence.

## I.

Pierre is a Haitian citizen who was admitted to the United States as a nonimmigrant visitor on a six-month visa in 1984 and was ordered to appear before an Immigration Judge (IJ) some five years after overstaying his visa. Although Pierre sought asylum on the ground that his father had been associated with the Duvalier regime, he failed to appear for his hearing and the IJ administratively closed the case.

Meanwhile, Pierre remained in the United States and was convicted of various crimes. In 1995, Pierre pleaded guilty in New Jersey state court to charges in three separate grand jury indictments for burglary, possession with intent to distribute cocaine within 1000 feet of a school zone, and unlawful possession of a handgun. Pierre spent approximately two years in prison and was released in 1997.

While incarcerated in New Jersey, Pierre was served with an order to show cause alleging that he was subject to deportation for overstaying his visa, and because of his aggravated felony convictions. Pierre contested the order, and a hearing was held on June 17, 1997 at which the INS moved into evidence the 1995 judgment of conviction, along with an affidavit Pierre executed in 1989 regarding the circumstances of his entry into the United States. The IJ found Pierre deportable because he had overstayed his visa and because of the 1995 convictions. Pierre stated that he wished to renew his asylum application and seek withholding of removal, but the IJ explained that his crimes disqualified him from either form of relief.

Pierre did not appeal to the Board of Immigration Appeals (BIA) within the 30-day period provided by statute. Instead, he filed a *pro se* notice of appeal on August 26, 1997, alleging that he had instructed his attorney to take an appeal, and asking

the BIA to excuse his late filing on the ground of ineffective assistance of counsel. Pierre was deported to Haiti on September 10, 1997; two months later, the BIA issued an order dismissing Pierre's appeal as untimely.

In July 1999, Pierre reentered the United States without inspection and returned to New Jersey where he was arrested twice for possession of a controlled substance with intent to distribute within 1000 feet of a school zone. After pleading guilty to those offenses in October 2002, Pierre was sentenced to concurrent terms of five years in prison.

In August 2004, the United States filed a complaint in the District Court which charged Pierre with illegal reentry after removal for conviction of an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Immigration and Customs Enforcement (ICE) agents took Pierre into custody and a grand jury indicted him for violating § 1326 four days later. Pierre filed a motion to dismiss the indictment, claiming that his July 1997 deportation order was invalid because: (1) he was denied a hearing on his asylum application; (2) his attorney's ineffective assistance precluded him from appealing to the BIA; and (3) the IJ retroactively applied the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to deprive him of judicial review.

The District Court denied Pierre's motion to dismiss. After noting that the motion was, in effect, a challenge to the validity of the underlying deportation order, the court explained that Pierre could not satisfy any of the three criteria for relief set forth in 8 U.S.C. § 1326(d). Accordingly, the case proceeded to a bench trial on stipulated facts. Pierre stipulated to the drug distribution conviction in 1995, admitted that he had been deported in 1997 and

had reentered the United States in 1999 without permission, and conceded that he was still in the United States in 2004. Accordingly, the District Court found Pierre guilty beyond a reasonable doubt of violating 8 U.S.C. §§ 1326(a) and (b)(2).

After denying Pierre's motion for a downward departure or variance under 18 U.S.C. § 3553(a), the District Court sentenced Pierre to 95 months in prison, which was the midpoint of the advisory Guidelines range of 85–105 months.

## II.

Pierre raises two issues on appeal. First, he contends that the District Court erred in denying his collateral attack on the deportation order under 8 U.S.C. § 1326(d). Second, he claims that his sentence is unreasonable under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## A.

Before proceeding to trial, the District Court rejected Pierre's challenge to the 1997 order of deportation, and denied his motion to dismiss the indictment.

Due process principles allow an alien subject to prosecution for illegal reentry the opportunity to collaterally attack the underlying removal order under certain circumstances. *See United States v. Torres,* 383 F.3d 92, 98 (3d Cir.2004). "The alien must establish that (1) he exhausted any administrative remedies that may have been available; (2) the hearing effectively eliminated the right of the alien to obtain judicial review from that proceeding; and (3) the prior hearing was fundamentally unfair." *United States v. Charleswell,* 456 F.3d 347, 351 (3d Cir.2006) (citation and internal quotation marks omitted); *see also* 8 U.S.C. § 1326(d).

We need not consider whether Pierre has satisfied the first two *Charleswell* elements because we conclude that he cannot show the third element, *viz.,* that the proceeding which precipitated the 1997 order of deportation was fundamentally unfair. *See Torres,* 383 F.3d at 102–03. In *Torres,* we explained that a deportation proceeding was "fundamentally unfair" if it deprived the defendant of a property or liberty interest protected by the Due Process Clause. *See id.* at 103–06. Pierre's contention that the 1997 proceeding was fundamentally unfair is based solely on the fact that the IJ did not hold an evidentiary hearing before denying his asylum application. However, Pierre's 1995 aggravated felony convictions for theft and possession of cocaine with intent to distribute in a school zone *required* the IJ to deny asylum. *See* 8 U.S.C. § 1158(d) (1996), *recodified at* 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B). Moreover, the regulations in force at the time of Pierre's immigration hearing provided that evidentiary hearings were "not necessary once the [IJ] has determined that such a denial is required." 8 C.F.R. § 240.11(c) (1997), *recodified at* 8 C.F.R. § 1240.11(c)(3). Thus, Pierre received the process he was due.

Even if the IJ's summary denial of Pierre's asylum claim in 1997 stated a Fifth Amendment violation, we could not entertain his § 1326(d) challenge unless he also demonstrated prejudice: *i.e.,* "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *Charleswell,* 456 F.3d at 361. This showing can be made only where the IJ actually *had discretion* to reach a different decision. *See Torres,* 383 F.3d at 103 n. 13. Pierre cannot show prejudice. As we explained above, Pierre's aggravated felony convictions statutorily barred the IJ from

granting him asylum. *See* 8 U.S.C. § 1158(d) (1996), *recodified at* 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B).[1]

## B.

Pierre challenges the reasonableness of his sentence, claiming that the District Court did not consider "all of the § 3553(a) factors so as to impose a sentence sufficient but not greater than necessary to meet the goals of sentencing."

In light of the Supreme Court's decision in *Booker* and its progeny, we need not tarry long on Pierre's claim that his sentence is unreasonable. First, we note that Pierre's 95–month sentence is at the midpoint of his Guidelines range of 85–105 months. As the Supreme Court has noted after *Booker*, the Guidelines are the "starting point" of the exercise of the court's discretion pursuant to 18 U.S.C. § 3553(a)(4). *Gall v. United States,* — U.S. ——, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007). In addition, the sentencing court must consider only relevant factors pursuant to § 3553(a). *United States v. Cooper,* 437 F.3d 324, 329 (3d Cir.2006).

Our review of the record demonstrates that the District Court considered Pierre's arguments and the government's responses thereto before concluding that none of Pierre's arguments justified a downward variance or a low Guidelines sentence. The District Court specifically acknowledged Pierre's arguments but stated, "I just don't think that any of the comments made should lead this [c]ourt to downwardly depart." The District Court added that Pierre "didn't just seek to leave his country. He sought to leave the country and come back here and commit crimes." Pierre does not argue that the District Court's factual observations are clearly erroneous, and we find them to be amply supported by the record.

■ It is true that the District Court did not explain *seriatim* why it was rejecting each and every one of Pierre's arguments. But this is not required. *See United States v. Ali,* 508 F.3d 136, 154 (3d Cir.2007) (citation omitted); *see also Cooper,* 437 F.3d at 329 (District Court need not make findings as to each of the § 3553(a) factors as long as the record demonstrates that they were taken into account). In sum, we find that the sentence imposed by the District Court was reasonable.

For all of the foregoing reasons, the judgment and sentence of the District Court will be affirmed.

---

1. Although Pierre argues that he was prejudiced when the IJ did not rely on the asylum application to determine the merits of a claim under the Convention Against Torture (CAT), he fails to mention that the CAT was not implemented until sixteen months after his deportation hearing, and thirteen months after he was deported. *See* Pub. L. No. 105– 277, div. G, Tit. XXII, § 2242(b), 112 Stat. 2681 (Oct. 26, 1998). As the BIA and the IJ lacked jurisdiction to entertain applications for CAT relief prior to its effective date in 1998, *see In Re H–M–V–,* 22 I. & N. Dec. 256, 260–61 (BIA 1998), the IJ would not have had discretion to consider a CAT claim had Pierre raised one.